BAKER *v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS — POWERS — ENGAGING IN COMMER-
CIAL ENTERPRISES.

A city has the right, through its board of poor commissioners,
to provide fuel for needy citizens, and, in emergency, when a
coal famine seems imminent, is authorized to purchase such
amount of fuel, in any market, as is necessary for that pur-
pose; but it cannot enter into a commercial enterprise by
buying and selling coal to its citizens as a business, thereby
entering into competition with dealers in coal, since such a
use of public funds is not for a public purpose.

2. EQUITY—CLEAN HANDS.

The unlawful conduct of complainant and other coal dealers in
entering into a combination, in violation of the statute (§§
11377–11379, 3 Comp. Laws), to enhance, regulate, and control
the price of coal in the market, will not excuse the unauthor-
ized action of defendant city in engaging in the coal busi-
ness, but bears upon the question as to whether complainant
comes into a court of chancery with clean hands.

3. SAME—JURISDICTION—DISMISSAL OF BILL.

A bill by a coal dealer and taxpayer to restrain a city from
dealing in coal, on the ground that such action damaged
his business, and was being conducted at a loss which the
taxpayers would have to bear, is properly dismissed where it
appears that complainant was not damaged in his business,
that a few days after the bill was filed the city discontinued
the business and up to that time no loss to the city had oc-
curred, and complainant neither by his bill nor by the evi-
dence showed that the prospective tax burden upon his prop-
erty to result from the city's action would amount to $100
(Act No. 183, Pub. Acts 1903).

Appeal from superior court of Grand Rapids; Newn-
ham, J. Submitted October 3, 1905. (Docket No. 54.)
Decided January 24, 1906.

Bill by Eugene E. Baker against the city of Grand
Rapids to restrain the maintenance of a municipal coal

yard. From a decree dismissing the bill, complainant appeals. Affirmed.

*Adsit & Danhof*, for complainant.

*Moses Taggart* and *S. W. Barker*, for defendant.

MCALVAY, J. In January, 1903, the supply of coal in the city of Grand Rapids was limited, with prospects of great scarcity. Citizens could not readily obtain a necessary quantity for household purposes. Complainant and certain other coal dealers were acting in concert to control the price of hard coal. Prices were fixed by certain circulars which, from time to time, were sent around to these dealers. The price was advanced to $12 per ton, and those coal dealers not following the fixed prices found it difficult to obtain coal. In view of the situation, the common council of Grand Rapids, on January 5, 1903, passed a resolution transferring from the contingent fund $10,000 to a special fund for the purpose of buying coal to sell to the citizens, and a commission was appointed for that purpose. This action was rescinded for the reason that its legality was questioned. The same amount, January 19, 1903, by a unanimous vote of the council, was transferred from the contingent fund to the poor fund, to be drawn upon in the usual way by the poor commissioners. The commissioners purchased coal and disposed of it in the following manner: Paupers were furnished coal free. Those poor people who could pay something for coal furnished were required to do so. Coal was also sold at cost to those citizens who could not get any elsewhere. The first car load of coal was purchased January 31 and the last February 5, 1903, and coal was sold to about 470 people. This work of disposing of the coal continued about one month. The board of poor commissioners on March 30th made its report to the council. Three thousand dollars had been drawn from the treasury, and $3,054.70 was returned.

Complainant, a retail coal dealer and a taxpayer in said city, on or about February 23, 1903, filed his bill of com-

plaint in this cause against the city of Grand Rapids, defendant, alleging that defendant, a municipal corporation, was unlawfully engaged in a commercial enterprise, to wit, the business of selling and dealing in coal, and unlawfully using the funds of the municipality for that purpose, and asked for an injunction to restrain such action. Complainant also alleged that the city was conducting the business at a great loss, was damaging his business, and that the money so used would enter into the assessments for taxes, and become a lien upon his property.

It was not contended by defendant that it could enter into the business of dealing in coal commercially, but that in the then existing emergency, when coal and other fuel could not be procured, and there was a reasonable probability that a coal famine was impending, it had the right to procure fuel to furnish, not only to the needy poor, but also to other citizens who could not procure it elsewhere, and claimed that the action of the city, through its board of poor commissioners, was not illegal and void. It admitted that out of such fund coal and wood were purchased, and alleged that no loss whatever was made to the city, and that the officers of the city had been informed by the coal and wood dealers that in a short time no hard coal or wood could be procured. To provide for an emergency, to be able to furnish to the needy fuel free of charge, as had been done for years, and to supply with coal at a reasonable price other citizens who could not pay the price of $12 a ton exacted by a combination of dealers, the proceedings complained of were taken. The answer also denied that complainant had been deprived of profits from his business, or would be subjected to any assessment upon his property by reason of the premises, or that it had, or would, unlawfully appropriate the property of complainant or any other person.

There is little, if any, dispute as to the facts in the case. The entire proofs consisted of the testimony of complainant and two officers of the city sworn in his behalf, to-

142 MICH.—44.

gether with the records of the city showing the action taken and the report of the board of poor commissioners. No evidence was offered on the part of defendant. From a decree for defendant, complainant appeals.

The city authorities had the right, through the board of poor commissioners, to provide fuel for needy citizens, and under the then existing emergency, where a coal famine appeared imminent, were authorized to purchase such amount of fuel in any market, as, in their opinion, would be necessary for that purpose. A municipality, however, cannot enter into a commercial enterprise, such as buying and selling coal to its citizens as a business, thereby entering into competition with dealers in coal. Such use of moneys is held not to be for a public purpose. *Opinion of the Justices*, 155 Mass. 601 (15 L. R. A. 809), and cases cited. The same court, where questions are submitted by the legislature and opinions required as to the constitutionality of pending legislation, said:

" Under a condition in which the supply of fuel would be so small, and the difficulty of obtaining it so great, that persons desiring to purchase it would be unable to supply themselves through private enterprise, it is conceivable that agencies of government might be able to obtain fuel where citizens generally could not. Under such circumstances we are of opinion that the government might constitute itself an agent for the relief of the community, and that money expended for the purpose would be expended for a public use.  *  *  *

" As to that we are of opinion that, if the supposed conditions exist in any city or town, it may be authorized under proper legislation to sell fuel, with the limitations above stated, so long as these conditions continue." *Opinion of the Justices*, 182 Mass. 610 (60 L. R. A. 592).

The first action of the city council was the transfer of $10,000 from the contingent fund to a special fund to be used for the purpose of selling coal to the citizens of Grand Rapids at actual cost under a commission to be appointed by the mayor. This action was rescinded, and,

"in order to make the $10,000 immediately available * * * for the purchase and sale of fuel," it was transferred to the poor fund. For such purposes the use of the fund so transferred was not a public use, the action of the council was not authorized under existing legislation. ·

If complainant has made a case which will warrant the court to exercise its equitable jurisdiction in his behalf, and has shown that he has suffered damages by reason of such action on the part of the city, he is entitled to relief. It appears that complainant at the time in question was in a combination with certain other coal dealers in the city of Grand Rapids, in violation of the provisions of sections 11377-11379, 3 Comp. Laws, the purpose and intent of which was to enhance, regulate, and control the price of coal in that market, and that by reason of such unlawful combination the municipality acted as it did relative to supplying coal to some of its citizens. Such unlawful conduct of complainant would not excuse unauthorized action by the city, but would bear upon the question as to whether complainant came into a court of chancery with clean hands. It further appears that his suit is brought under an agreement that certain coal dealers are to bear the expense of litigation. Complainant testified that he was not damaged in his business to the amount of a single dollar, that he supplied all of his customers, and had no coal to supply others. It is shown that a few days after the bill of complaint was filed the city discontinued selling coal, and the $10,000 put into the poor fund was transferred back to the contingent fund. It also appears, without dispute, that by the city's action no loss at all occurred, and no increased burden could be imposed upon complainant's property by reason thereof. By his case he failed to show any present or prospective injury.

Complainant commenced his suit in his own behalf to restrain the city from unlawfully injuring him in his business and from subjecting his property to the burden of an unlawful assessment for taxes. Neither by his bill of complaint nor by the evidence in the case does it appear

that the court had jurisdiction under the statute (Act No. 183, Pub. Acts 1903) to restrain the proceedings taken or to be taken which might have resulted in a tax being levied upon his property, for the reason that it would not have amounted to more than $100. The record shows that complainant has not made a case entitling him to relief.

For the reasons stated, the decree of the court below is affirmed, with costs of both courts.

GRANT, BLAIR, and MONTGOMERY, JJ., concurred with MCALVAY, J. OSTRANDER, J., concurred in the result.