GRAND RAPIDS INDEPENDENT PUBLISHING COMPANY
*v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—OFFICERS—TAXPAYERS' SUITS—EQUITY
—DAMAGES.

   A taxpayer seeking equitable relief from action of home-rule
   city's officials as to use of public funds must show present
   or prospective damages by reason of what is charged in order
   to be entitled to relief sought.

2. SAME—WATER RATE PAYERS—TAXPAYERS—TRANSFER OF FUNDS.

   Plaintiffs, water rate payers and taxpayers, had no right to
   complain of action of municipal officials of home-rule city
   which owned its own water system in the past and proposed
   transfers of surplus funds from water works revenue fund to
   the city's general fund, where bill does not complain as to the
   water rates charged, there is no present or threatened de-
   fault, one of the plaintiffs is not a taxpayer, and those who
   are will be benefited by the ensuing decrease in the tax
   burden and plaintiffs did not purchase their bonds until
   after other like transfers to the general fund had been made
   (PA 1933, No 94, as amended).

3. SAME — BONDHOLDERS — WATER REVENUE FUNDS — TRANSFER OF
FUNDS.

   Holders of 13/100 of 1% of bonds outstanding at time suit
   to enjoin transfer of surplus water revenue funds of munici-
   pally-owned water works to home-rule city's general fund

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 42 Am Jur, Public Funds §§ 79, 80.
[1–5] Right of county or municipal authorities temporarily to
loan or transfer money from one fund or department to an-
other. 70 ALR 431.
Rights and liabilities of municipality as to interest earned
on improvement assessments or other special funds collected
or held by it. 143 ALR 1341.
[6] 1 Am Jur, Actions § 11; 50 Am Jur, Statutes § 596.
[7] 14 Am Jur, Costs §§ 23, 91.

and to compel restoration of previous like transfers had no right to bring such suit where bonds, and authorizing ordinance, by reference to revenue bond act, require that such action be brought by holders of 20% of the issue then outstanding (PA 1933, No 94, as amended).

4. Same—Revenue Bonds—Enforcement Suits—Harassment.
   Requirement that suits to enforce rights of holders of municipal water revenue bonds be brought by holders of at least 20% of the outstanding bonds was to prevent suits brought for the purpose of harassing the public utility and hurting its credit by useless, expensive, spite suits by a very few dissident bondholders, who might not agree as to policy with those charged with the responsibility of the proper conduct of the utility (PA 1933, No 94, as amended).

5. Same—Revenue-Producing Public Improvement—Surplus.
   The revenue bond act of 1933, as originally enacted and as amended, distinctly provides that surplus money in receipts for services by revenue-producing public improvement may be turned over to the municipality (PA 1933, No 94, §§ 22, 26, as amended by PA 1946 [1st Ex Sess], No 23, and PA 1947, No 204).

6. Action—Statutes—Remedy.
   All statutory requirements must be complied with when remedy affording relief sought is provided by statute.

7. Costs—Construction of Statute.
   No costs are allowed in suit to enforce compliance with statutes by municipal officers, where construction of statute is involved.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 17, 1952. (Docket No. 90, Calendar No. 45,648.) Decided January 5, 1953.

Bill by Grand Rapids Independent Publishing Company, a Michigan corporation, and William G. Dalton against City of Grand Rapids, a municipal corporation, and others to restrain transfer of funds from water works revenue fund to city's general fund. Frank D. McKay intervened as party plaintiff. Amended bill of plaintiffs and intervenor

dismissed on motion. Plaintiffs and intervenor appeal. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal* and *Bolt & Poel,* for plaintiffs and intervenor.

*Fred N. Searl,* City Attorney, and *John E. Damon,* Deputy City Attorney, for defendants.

BUTZEL, J. Grand Rapids Independent Publishing Company and William G. Dalton, together with Frank D. McKay, an intervenor by permission, plaintiffs, filed an amended bill of complaint duly sworn to, seeking to enjoin the city of Grand Rapids, the members of its city commission, its comptroller, treasurer, city manager and mayor, defendants, from transferring $265,000 from the water works revenue fund to the city's general fund; also asking that defendants' previous action of June 25, 1951, in determining there was a surplus in the water works revenue fund and transferring to the city treasurer $209,000 and also all the prior transfers since August 11, 1938, the date of a revenue bond issue, and amounting to $889,634, be declared illegal and void, and that defendants be ordered to restore all sums so transferred to the water works revenue fund; also seeking an accounting and such other equitable relief as the court might decree. The defendants in an answer under oath set forth additional facts to show that plaintiffs are not entitled to the relief prayed for. Plaintiffs filed no reply to the sworn answer. Defendants in their answer to the amended bill made a motion to dismiss, based on all the pleadings and the testimony taken on a former motion to dismiss the original bill which contained almost all the pertinent averments in the amended bill. The trial judge granted the motion to dismiss the amended bill and plaintiffs appeal. For a fuller understanding of

the controversy, we very briefly refer to certain facts disclosed by the sworn pleadings and the testimony taken on the first motion to dismiss to the extent that it is pertinent to the second motion contained in the amended answer.

Plaintiffs sue in the capacities of taxpayers and water rate payers, and 2 of them each as holder of a $1,000 bond of the water revenue bonds hereinafter described. The amended bill shows that this is not a rate case, nor does it claim that the water rates are too high or low or unreasonable. Plaintiff Dalton is not a taxpayer. He is the owner of an inexpensive home which is exempt from taxation because he is a veteran. The other plaintiffs certainly cannot be injured as taxpayers if the city nets a comparatively small return from its very large investment in its water system and thus decreases the tax burden of property owners. In *Andrews* v. *City of South Haven,* 187 Mich 294 (LRA1916A, 908, Ann Cas 1918B, 100), in affirming an order sustaining a demurrer in a suit brought by a taxpayer to restrain a municipally-owned utility from making expenditures in a certain manner, we said:

"The bill does not show that complainant has suffered or will suffer any loss or damage as a taxpayer by reason of what is charged. No increase of taxation for that purpose is shown. * * * To entitle him to equitable relief as a taxpayer, present or prospective damages must be shown. *Baker* v. *City of Grand Rapids,* 142 Mich 687."

The city of Grand Rapids, the sole owner of its water system, is a home-rule city. In accordance with an ordinance adopted by the city on August 11, 1938, and with PA 1933, No 94, as amended,* and thereafter called the revenue bond act of 1933, and hereinafter more fully discussed, the city issued se-

---

* CL 1948, § 141.101 *et seq.* (Stat Ann 1949 Rev § 5.2731 *et seq.*).

rial bonds aggregating $2,255,000 payable in the earlier years in lesser annual instalments and interest, and since 1949 at the rate of $90,000 per year and interest. There has been no default in payments of principal or interest and up to the time the suit was begun aggregate payments had been made on the principal amounting to $725,000 or almost 1/3 of the entire bond issue. This does not include $90,000 and interest that became due August 1, 1952.

The facts leading up to the bond issue are set forth in *White* v. *Welsh,* 291 Mich 636, where the legality of the project was upheld. Grand Rapids had a water system in 1938, but desired to build water pipes 46 inches in diameter for 30 miles to Lake Michigan, an intake pipe, pumping and boosting stations and additional reservoirs, all at a cost of $4,100,000, of which, the Federal Emergency Administration of Public Works agreed to pay the sum of $1,845,000. Grand Rapids obligated itself to pay the sum of $2,255,000 which it raised by issuing the water revenue bonds, 2 of which of $1,000 each are owned by 2 of the plaintiffs and by virtue of which ownership they also claim the right to bring this suit.

Plaintiff McKay purchased the 2 bonds after $209,-000 had been transferred to the city's general fund from the water works fund by virtue of the action of June 25, 1951. He tried to purchase $15,000 of the bonds, as he considered them very high grade, but was only able to purchase $2,000 of them. He paid $1,090.50 for each bond. He testified at the time he bought them he was thoroughly familiar with the facts as set forth in the bill of complaint. Very shortly before this suit was begun he transferred one of the bonds to the corporate plaintiff in which he is interested.

In the amended bill of complaint plaintiffs allege that the assets of the utility are carried on the books of the city as of the value of $13,010,749.54, but which

has been depreciated as of June 30, 1951, by the sum of $2,119,333.40, leaving a depreciated book value of $10,891,416.41. This would indicate an average depreciation of about $163,025.64 a year. Plaintiffs claim that this is only a bookkeeping entry and that the amounts for depreciation should have been set up and kept in a separate fund according to the revenue bond act of 1933, as amended, *supra,* and the ordinance. They further claim that depreciation should have been at the rate of 2% of the value of the assets each year but assert no authority for their opinion. Had the city adopted and followed plaintiffs' formula and method of depreciation, there would be a larger amount in the depreciation account than the entire balance to become due on the unmatured bonds at the present time. In view of our decision, it is unnecessary to detail further allegations.

In a sworn answer defendants also set up many facts and moved for the dismissal of the amended bill of complaint. Plaintiffs did not reply to this sworn answer. In general the defendants aver that from 1938 to 1950 there always has been a substantial compliance with the revenue bond act of 1933, as amended, the ordinance and the provisions in the bonds, that during that period they charged 1% of the book value of the depreciable assets of the system to operating expenses and that while this amount was not taken out of the physical assets and set up and placed in a special fund, it has been retained in the system and for the period it amounted to $1,332,445; that during the same period there was expended for improvements, betterments and extensions of the system the sum of $1,776,221.46. They further state in their verified answer that for the year 1950–1951, and prior to the purchase of the 2 bonds by plaintiffs, they began a literal compliance with the terms of the act and ordinance and set aside in separate book accounts the sum of $60,000 as a de-

preciation fund and $350,000 for the contingent fund for expansion, et cetera, and that for the year 1951-1952, they have made provision for adding $40,000 to the depreciation fund and $300,000 to the contingent fund.

Each bond distinctly states that:

"This bond is issued by the city of Grand Rapids pursuant to ordinance duly enacted for the purpose of defraying the cost of improving and extending the water system of said city, under and in full compliance with the Constitution and statutes of the State of Michigan, *including among others, PA 1933, No 94, as amended,* and is one of an issue of bonds in the total principal amount of $2,255,000 payable solely from and secured by a statutory lien on the net revenues of the water system of the city of Grand Rapids, including all future additions and extensions thereto. This bond is a self-liquidating revenue bond, does not constitute an indebtedness of the city of Grand Rapids within any State constitutional provision or statutory limitation, is not a general obligation of the city of Grand Rapids, and the principal of and interest on this bond are exempt from any and all State, county, city, incorporated village, municipal and other taxation whatsoever under the laws of the State of Michigan, and are secured by the *statutory lien created by PA 1933, No 94, as amended,* and are payable solely from the revenues of the water system of said city as hereinabove stated." (Italics supplied.)

It also states that:

"The city of Grand Rapids has covenanted and hereby covenants and agrees at all times while this bond or any bond of the issue of which it is a part are outstanding and unpaid to fix and maintain such rates for services and water furnished by the water system of said city as will be fully sufficient to provide for the payment of the interest on and principal of all such bonds as and when the same become due

and payable, to create a bond and interest redemption fund therefor, to provide for the payment of the expenses of administering and operating said system and such expenses for maintaining said system as are necessary to preserve the same in good repair and working order, to build up a reserve for depreciation of said system and to build up a reserve for improvements, betterments and extensions to said system other than those necessary to maintain the same in good repair and working order."

PA 1933, No 94, was amended by PA 1946 (1st Ex Sess), No 23, which provides that the act shall be known as "The revenue bond act of 1933." It appears in its amended form in CL 1948, § 141.101 *et seq.* (Stat Ann § 5.2731 *et seq.*). Act No 94, *supra,* was first amended by PA 1935, No 66, and in 1938, when the revenue bonds were issued, section 8 of that statute, as then amended, provided:

"There shall be created in the authorizing ordinance a first lien by this act made a statutory first lien upon the revenue of any such   *   *   *   water supply and/or water supply system,   *   *   *   to and in favor of the holders of said bonds and each of them and to and in favor of the holders of the coupons of said bonds and each of them."

Section 9 of the act, as it read in 1938, provided:

"The revenue from such system or project, or combined systems or combined projects   *   *   *   shall be and remain subject to said statutory lien upon the payment in full of the principal of and interest upon said bonds. *The holder or holders of said bonds or coupons representing in the aggregate not less than 20 per cent of the entire issue then outstanding may, either at law or in equity, by suit, action, mandamus, or other proceedings, protect and enforce said statutory lien upon the revenue of said project or projects,* and may, by suit, action, mandamus or other proceedings, enforce and compel per-

formance of all duties of the officials of the borrower, including the fixing of sufficient rates, the collection of revenues, *the proper segregation of the revenues of the system or project, or combined systems, or combined projects, and the proper application thereof.*" (Italics supplied.)

The act in its original and amended form provides that surplus revenues, after provisions for payment of the serial payments and interest next to become due, depreciation, et cetera, have been made, may be used for such purpose or purposes as the governing board of the borrower may determine for the best interest of the borrower.*

The ordinance as adopted by the city on August 11, 1938, provides the setting aside of funds in the following order:

a. Sufficient funds to defray necessary current expenses for administering and operating the system and keeping it in good repair condition.

b. A bond and interest redemption fund.

c. A reasonable reserve for a depreciation fund.

d. A contingent fund to build up a reasonable reserve for improvements, betterments and extensions of the water system other than that necessary to keep it in good repair and working order, to be known as the contingent fund.

e. Then any surplus shall be disposed of by the city commission for the best interest of the city.

The ordinance also states that the "bonds are authorized under the provisions of PA 1933, No 94, as amended;" that a statutory lien upon the revenues of the water system and the city of Grand Rapids is created and that the holder or holders of the bonds "shall have and are hereby granted all rights and

* See PA 1933, No 94, § 22 (Stat Ann § 5.2752), and PA 1933, No 94, §§ 22, 26, as amended by PA 1946 (1st Ex Sess), No 23, and PA 1947, No 204 (CL 1948, §§ 141.122, 141.126 [Stat Ann 1949 Rev §§ 5.2752, 5.2756).—REPORTER.

remedies for the enforcement of such lien granted and authorized by Act No 94, aforesaid."

The record does not show what motivated plaintiffs' action in bringing the suit but owing to previous criticism it is a fair inference that the publishing company of which Mr. McKay is president may have been at least partly responsible through its newspaper for the action by the new commission in literally complying with the ordinance setting up the separate funds in 1950.

Defendants claim that there is a misjoinder of parties having different interests, that Mr. McKay bought the bonds at a premium with full knowledge of what had previously transpired and cannot complain of any alleged diversion of the revenues from the city's water system in the past; that there is no basis in either law or fact for plaintiffs' claims, and that, moreover, the suit is not brought because of any default in payments of principal or interest or in making proper provisions for them; that there is no complaint by plaintiffs on account of rates and they have no standing as payers of water rates, nor as taxpayers for reasons heretofore stated, and that they have no right to bring suit as the statute provides that suit may be brought by holders of 20% of the outstanding bonds, when as a matter of fact plaintiff bondholders only own $2,000 face value of bonds or approximately 13/100ths of 1% of the bonds outstanding at the time the suit was begun. Plaintiffs, however, claim that questions of fact and law are raised by the pleadings and that the suit should not have been dismissed without a hearing.

The trial judge based his order of dismissal on several grounds. The pleadings plainly show that plaintiffs had no right to complain as water rate payers or as taxpayers. This is not a case where there has been even a threatened default in serial payments and interest as they mature. Even assum-

ing that there is no misjoinder of parties and that there are sufficient questions of fact raised so that the case should not have been dismissed on motion, as claimed by plaintiffs, we hold that plaintiffs, owning less than 20% of the outstanding bonds, have no right to bring this action. Plaintiffs are holders of a very small section of 1% of the bonds outstanding at the time the suit was instituted. The ordinance and bonds distinctly refer to the revenue bond act of 1933, *supra,* which necessitates that action to enforce the lien, the fixing of sufficient rates, collection of revenues, the proper segregation of the system or project or combined systems or combined projects and the proper application thereof, be brought by the holders of 20% of the issue then outstanding. This 20% limitation on the right to enforce the lien and the other provisions was inserted in the revenue bond act, *supra,* for a distinct purpose. It does not consist of meaningless words. It must be presumed that it was inserted to prevent suits by the holders of less than 20% of the outstanding bonds from harassing the public utility and hurting its credit by useless, expensive, spite suits by a very few dissident bondholders, who might not agree as to policy with those charged with the responsibility of the proper conduct of the utility.

The bonds distinctly refer not to a collateral or additional instrument but to the revenue bond act of 1933, as amended. Everyone is presumed to know the law. While plaintiffs base their complaints on an alleged violation of certain provisions of the act, they chose to ignore the 1 in which the act requires 20% of the bondholders to bring the action.

Plaintiffs rely on the following cases which can be readily distinguished. In *Wolgamood* v. *Village of Constantine,* 292 Mich 222, plaintiffs therein, not as bondholders, but as taxpayers, brought suit to enjoin a threatened misapplication of public funds and

alleged unlawful issuance of additional bonds, failure to collect full published rate for use of current, unlawful discrimination among customers, default in payment of interest on the bonds that had been issued and other misconduct, all of which would be injurious to the taxpayers and add to their burdens. We held that the suit should not have been dismissed on motion without hearing.

In the instant case, the revenue bond act of 1933, as amended, distinctly provides that surplus money may be turned over to the city. *Mendelson* v. *Realty Mortgage Co.*, 257 Mich 442, cited by plaintiffs was a suit in assumpsit on a past due and unpaid bond. We held that the bond and the mortgage for the benefit of bondholders to secure bonds have different functions and are 'separate contracts, and as the limitation to sue was not set forth in the bond, a negotiable instrument, plaintiff had a right to sue on the bond. This is not the case in the instant suit.

Again in *Guardian Depositors Corp.* v. *David Stott Flour Mills, Inc.*, 291 Mich 180, suit was brought in assumpsit to recover for past due bonds. In the majority opinion of the Court, we held that the limitation to sue only by the trustee as set forth in the indenture, was not clearly expressed in the bonds. This is not the instant case where the statute is distinctly referred to in the bonds which are not in default, nor do plaintiffs claim that a default in payment is even threatened. When a remedy is given by statute, all requirements imposed by it must be complied with. *Lafayette Transfer & Storage Co.* v. *Michigan Public Utilities Commission*, 287 Mich 488 (28 PUR NS 455); *Leith* v. *Citizens Commercial & Savings Bank*, 304 Mich 508.

While our attention has not been directed to any Michigan case where the exact question has been presented, the question of this limitation on the right to sue has arisen in very many other States. The

general principle is set forth in the vast majority of States where the question has arisen. The general rule is set forth in 108 ALR 88 *et seq.*, as follows (p 118):

"Since express restrictions on the right of action of an individual holder of one or more of a series of corporate bonds or other secured obligations usually refer directly to suits to foreclose or enforce the deed of trust or mortgage, there has been little doubt that they were intended to apply to such a suit under ordinary circumstances."

An overwhelmingly large number of cases in support of this principle are cited in the copious notes as well as to the supplemental annotations in 174 ALR 454, to support the rule that:

"Individual holders of one or more of a series of corporate bonds or other secured obligations have been held to be precluded from maintaining a foreclosure suit because of express restrictions on their right of action."

The instant case is stronger on the facts than many of the cases cited. It is not a suit as in most of the cases cited on an existing or threatened default of payment of an obligation. It is a suit in equity to enforce certain provisions of the lien created by statute and ordinance. The act distinctly provides that it be brought by 20% of the holders of the outstanding bonds. Plaintiffs with less than 1% of the outstanding bonds did not have the right to bring this suit, and, therefore, the motion to dismiss was properly granted. Having come to this conclusion, we need not pass on the other questions raised by the respective parties on appeal.

The decree dismissing the case is affirmed, but without costs, the construction of a statute being involved.

Dethmers, C. J., and Adams, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.