OLEKSY v SISTERS OF MERCY OF LANSING, MICHIGAN

JACKSON PROSECUTOR v SISTERS OF MERCY OF LANSING,
MICHIGAN

1. TRUSTS—PARTIES—CHARITABLE TRUSTS—ENFORCEMENT OF TRUSTS—
STATUTES.

The Attorney General, rather than a local prosecuting attorney,
is the proper representative for the beneficiaries of a trust
where they are uncertain or indefinite; this authority to enforce
charitable trusts is exclusive with the Attorney General (MCLA
554.352; MSA 26.1192).

2. PARTIES—STANDING—ADDITION OF PARTIES.

A trial court properly rejected a plaintiff's motion to add the
Attorney General as a party plaintiff where the plaintiff lacked
standing to initiate the controversy, the Attorney General was
the only proper party, and the Attorney General had refused to
intervene.

3. QUO WARRANTO—PARTIES—CORPORATIONS—ABUSE OF CORPORATE
POWER—COURT RULES.

The Attorney General has exclusive standing to bring an action
in *quo warranto* for abuse of corporate power (GCR 1963,
715.2[1] [c]–[g]).

4. QUO WARRANTO—PARTIES—ANTI-TRUST ACTIONS—STATUTES—
COURT RULES.

A court rule prevails over a statute where the two conflict;
therefore, a county prosecutor does not have authority to bring
a *quo warranto* action against a corporation alleging anti-trust
violations because the Attorney General has by court rule been
given superior authority to bring such an action despite a

REFERENCES FOR POINTS IN HEADNOTES
[1] 76 Am Jur 2d, Trusts § 135.
[2] 7 Am Jur 2d, Attorney General § 16.
  59 Am Jur 2d, Parties §§ 200, 201.
[3, 4] 7 Am Jur 2d, Attorney General § 20.
  65 Am Jur 2d, Duo Warrants §§ 61, 62, 128.

conflicting statute (MCLA 445.702; MSA 28.32, GCR 1963, 715.2[1]).

Appeal from Jackson, Russell E. Noble and Richard E. Robinson, JJ. Submitted December 14, 1976, at Lansing. (Docket Nos. 25732, 27655.) Decided March 29, 1977.

Complaint by Stanley P. Oleksy, M. D., and others against the Sisters of Mercy of Lansing, Michigan, to enjoin the sale of Mercy Hospital, located in Jackson, Michigan, to W. A. Foote Memorial Hospital, Inc. Complaint dismissed. The Jackson County Prosecutor then initiated an action in *quo warranto* against both the Sisters of Mercy and W. A. Foote Memorial Hospital to enjoin the sale. Summary judgment for defendants. Plaintiffs in both cases appealed, and the cases were consolidated for hearing by the Court of Appeals. Affirmed.

*Alvin G. Dahlem* and *Joseph C. Olk,* for plaintiffs Stanley P. Oleksy, M. D., and others.

*Judd R. Spray,* Assistant Prosecuting Attorney, for the Jackson County Prosecutor.

*Colombo & Colombo* (by *Louis J. Colombo, Jr., John P. Hartwig,* and *Lawrence F. Raniszeski),* for defendant.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *John H. Schomer, Jane Forbes* and *Jack C. Radcliffe Jr.),* for W. A. Foote Memorial Hospital, Inc.

Before: J. H. GILLIS, P. J., and M. F. CAVANAGH and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. The plaintiffs in both

cases being appealed come to this Court from summary judgments in the circuit court of Jackson County. GCR 1963, 117.

In the first case (hereinafter referred to as *Oleksy)*, a doctor sued on behalf of himself and other contributors to the building funds of Mercy Hospital. The defendants were the Sisters of Mercy, a non-profit corporation, operating the allopathic hospital which is located in the city of Jackson. The plaintiffs sought to enjoin the Sisters of Mercy from the sale of Mercy Hospital to W. A. Foote Memorial Hospital. Their standing was predicated on the "time, talent, financial and material resources" they donated which were used to "build, expand and maintain" the hospital. It was alleged that the sale to Foote Hospital would be detrimental to themselves and the community for two reasons: first, that Foote Hospital "is not operated in a Christian atmosphere under a pro-life philosophy, but rather contrary to the preservation of the life of the unborn" and secondly, that the Sisters of Mercy would take the proceeds from the sale and relocate in some other county leaving the Jackson area with a publicly operated hospital. Bruce Barton, the Jackson County prosecutor, moved to intervene in *Oleksy* but the motion was denied.[1]

An opinion was rendered in the *Oleksy* case denying standing to the plaintiffs and a motion for rehearing was similarly dismissed. The prosecutor then initiated his own action to enjoin the sale using GCR 1963, 715.2, an action in *quo warranto* against the defendants, Sisters of Mercy, for abuse of corporate power and for antitrust violations along with W. A. Foote Memorial Hospital. The

---

[1] The basis for the prosecutor's intervention was "in the nature of *quo warranto*", GCR 1963, 715.2(2), based on the same theory as plaintiffs' (charitable trust).

circuit court, acting on a motion for summary judgment, held against the prosecutor on all counts.

I

In *Oleksy* all parties accepted and argued the theory advanced by the plaintiffs; to wit, that the Sisters of Mercy, a non-profit corporation, held the property (the hospital) in trust for the benefit of the people of Jackson who contributed time, talent, money and services. The trial judge concluded that in Michigan the Attorney General has exclusive authority to enforce a charitable trust. While we express no opinion on the merits,[2] we affirm the analysis used by the trial judge.

The charitable trust act, MCLA 554.351; MSA 26.1191, recognizes trusts even though beneficiaries and objects of the trusts are indefinite. Since 1965, the Attorney General instead of local prosecuting attorneys must represent the beneficiaries of a trust where they are uncertain or indefinite.[3] A majority of states follow this principle, using the rationale that litigation by private citizens would be vexatious and burdensome. Bogert, Trusts & Trustees (2d ed), § 414 p 340; 62 ALR 881; 124 ALR 1237. See also, *King v Emmons,* 283 Mich 116; 277 NW 851 (1938). Accordingly, we find that Michigan public policy also requires that the Attorney General have exclusive authority to enforce

---

[2] We cannot concede as readily as the parties have in the lower court, that the Sisters of Mercy are charitable trustees. *See,* Bogert, Law of Trusts (5th ed), § 54, p 203:

"If a gift is made to a charitable corporation for any or all of its purposes, with the intent that full title shall vest in the corporation, subject only to the duty of the corporation to keep within the purposes of its charter, no trust is created."

*But cf., Scarney v Clarke,* 282 Mich 56; 275 NW 765 (1937).

[3] 1965 PA 12, § 1; MCLA 554.352; MSA 26.1192.

charitable trusts. The lower court opinion is affirmed.

In addition, we reject the second argument advanced by plaintiffs that they should have been permitted to add the Attorney General. Permitting a party who lacks standing to initiate a controversy by adding the proper party (in this case the Attorney General) who has refused to intervene, would vitiate the basic adversarial element of litigation:

"There are always two parties to every ordinary lawsuit * * * Each of the two, in their respective roles, constitute essential elements of the litigation in which they engage." 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 538.

The trial court in *Oleksy* correctly rejected the motion to add the Attorney General.

## II

In *Barton,* the Jackson county prosecutor advanced theories based on the alleged *ultra vires* acts of Mercy Hospital (a non-profit corporation)[4] and violations of state anti-trust laws between both of the Jackson hospitals. The lower court held that the Attorney General is exclusively designated to raise questions relating to abuse of corporate powers under MCLA 450.1271; MSA 21.200(271).

Standing to sue for *ultra vires* acts comes from various statutory provisions and the court rules. While the parties below referred to the Michigan Business Corporation Act, MCLA 450.1271; MSA 21.200(271), which gives standing to the Attorney

---

[4] MCLA 450.117 *et seq.;* MSA 21.118 *et seq.*

General, we would point out that for the purposes of the new corporate law "corporation" is defined as one "for profit". MCLA 450.1106; MSA 21.200(106). Sisters of Mercy is a non-profit corporation. However, we find that the Attorney General has corresponding power to sue a non-profit corporation under MCLA 600.3601; MSA 27A.3601. The action must be brought in *quo warranto* under GCR 1963, 715. In the instant case the Attorney General has refused to bring a *quo warranto* action. Writing a letter to the prosecutor, the Attorney General stated that he had reviewed the request and concluded that:

"All such actions may be properly litigated by you as prosecuting attorney, and if such violations do in fact exist, it is your duty to do so. No security is required. See, GCR 1963, 718.3(2)."

The primary issue on appeal involves the proper interpretation of the *quo warranto* court rule whenever the Attorney General refuses to act. Having read the arguments of the parties and studied the court rules we conclude that the prosecutor is without standing to bring *quo warranto* for either charge.

In commentary to the statute for *quo warranto,* MCLA 600.4501; MSA 27A.4501, the authors stated that prior procedural law was omitted in the statute, yet the substantive coverage for such actions was retained. The "procedure" for such *quo warranto* actions is covered by GCR 1963, 715.

In the statute, the scope of the remedy is substantially the same as prior laws. Included as matters falling within the statute, *i.e.,* what is properly brought as *quo warranto,* are claims concerning the abuse of corporate power. RJA § 4521–4535, GCR 1963, 715.2(1)(c)–(g), *People ex rel Attor-*

*ney General v Michigan Sanitarium & Benevolent Ass'n,* 151 Mich 452; 115 NW 423 (1908).

While we have established that *quo warranto* is the proper action for abuse of corporate power we must also decide the proper procedure, *i.e.,* the parties who bring the action.

Turning to the court rule 715.2(1), we find that only the Attorney General has the standing to bring a *quo warranto* action for abuse of corporate power. This standing is found under 715.2(1)(c)–(g).

Portions of the court rule, to wit, 715.2(2),(3) and (4), permit additional parties to bring *quo warranto* actions without the Attorney General:

".2 Parties.
"(1) Actions by Attorney General.

\* \* \*

"(2) Actions by Prosecutor or Citizen. Other actions for quo warranto shall be brought by the prosecuting attorney of the proper county, without leave of court, or by any citizen of the county by special leave of the court or a judge thereof.

"(3) Application to Attorney General. Any person may apply to the attorney general to have the attorney general bring the actions specified in sub-rule 715.2(1). The attorney general may require the person to give security to indemnify the state against all costs and expenses of the action. The person making the application, and any other person having the proper interest, may be joined as parties plaintiff.

"(4) Refusal of Attorney General to Bring the Action. If, upon proper application and offer of security, the attorney general refuses to bring the action, the person may apply to the appropriate court for leave to bring the action himself. Leave to bring the action may be granted by the court."

But these remaining sections of the rule do not permit the prosecutor to bring *quo warranto* for

situations covered by (1). Under (2), "other ac-
tions" that may be brought by the prosecutor are
actions *other than* those enumerated under
715.2(1)(a)–(g) where the Attorney General and the
prosecutor had been given concurrent power.
Therefore the right to bring the *ultra vires* action
is vested exclusively in the Attorney General un-
der (1) and the prosecutor's case under (2) cannot
stand. Next the prosecutor argues that he may opt
to bring the action under (3) and (4) of the rule.
Those portions clearly apply to citizen actions and
not to the prosecutor, who has been mentioned in
a separate section of the rule.[5]

The second count of the *quo warranto* action
alleged violations of state anti-trust laws. The
applicable statutes are MCLA 445.701, 702; MSA
28.31, 32 and MCLA 445.761; MSA 28.61, under
which both the Attorney General and the prosecu-
tor are given concurrent power to bring *quo war-
ranto* proceedings. The trial court below dismissed
the anti-trust count initially on the premise that
the anti-trust laws do not apply to non-profit cor-
porations. See, *Campbell v North Woodward Board
of Realtors, Inc,* 14 Mich App 714; 166 NW2d 12
(1968). We find that the trial court need not have
discussed the merits of the anti-trust claim. As in
the corporate count we are dealing here with an
action brought under the *quo warranto* rule. In
this instance, however, the anti-trust statute is
inconsistent with the court rules because the pros-
ecuting attorney is given concurrent power with
the Attorney General to bring *quo warranto.* The
question of standing in this case is a procedural
issue. When statute and court rule conflict, the

---

[5] The rationale of *Grand Rapids v Harper,* 32 Mich App 324; 188
NW2d 668 (1971), *lv den,* 385 Mich 761 (1971), would not apply to a
prosecutor. "Any person" should be liberally defined except in cases
where the rule has provided more limited application.

rule prevails. *Buscaino v Rhodes,* 385 Mich 474; 189 NW2d 202 (1971). By court rule GCR 1963, 715.2(1), anti-trust actions are within the listed situations where the Attorney General has superior authority despite conflicting statute. Applying *Buscaino,* MCLA 445.702; MSA 28.32 cannot be evoked by the prosecutor to circumvent the obvious intent of the court rule: that the Attorney General alone bring actions against corporations in situations (c)–(g).

### III

Having resolved the *Barton* case on the issue of standing we need not address the matters of res judicata raised by defendants.

Affirmed. Costs to defendants.