RAYFORD v CITY OF DETROIT

Docket No. 74531. Submitted December 6, 1983, at Detroit.—Decided
    February 8, 1984.

    Following the adoption by the Detroit City Council of the city
    budget for the fiscal year ending June 30, 1984, the Mayor of
    the City of Detroit implemented a savings plan, which for
    purposes of this action was viewed as an attempt by him to
    amend the budget without council approval, which forced the
    layoff of personnel from various city departments, including
    224 police officers. The individual plaintiffs herein, Estella
    Rayford and Dorothy M. Woolfolk, are two of those officers who
    brought an action against the City of Detroit, its mayor, and
    others, in the Wayne Circuit Court alleging that the mayor's
    implementation of an amended budget without city counsel
    approval was contrary to law. The Detroit Police Officers Asso-
    ciation was permitted to intervene as a plaintiff. Plaintiffs
    moved for an order requiring the reinstatement of the laid-off
    officers, charging a violation of the Uniform Budgeting and
    Accounting Act. The defendants moved for an accelerated
    judgment and a summary judgment. The trial court, Irwin H.
    Burdick, J., denied the defendants' motions and, treating plain-
    tiffs' motion as one for summary judgment, granted it, on the
    ground that defendants had violated § 17 of the act. Defen-
    dants' motion for a stay of the trial court's order was thereafter
    denied by the Court of Appeals and granted by the Michigan
    Supreme Court on November 4, 1983. Defendants appeal rais-
    ing several issues. The Court of Appeals considered one issue as
    dispositive: Do plaintiffs have standing, either as city employees
    or as city taxpayers, to bring this suit? *Held:*

        1. Plaintiffs do not have standing, either as city employees or

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 581.
    73 Am Jur 2d, Statutes § 43.
[2-4] 59 Am Jur 2d, Parties § 30.
[2] 73 Am Jur 2d, Statutes § 9.
[3, 4] 59 Am Jur 2d, Parties § 27.
[6] 74 Am Jur 2d, Taxpayers' Actions § 14.

as city taxpayers, to bring this suit under the Uniform Budgeting and Accounting Act.

2. The purpose of the Uniform Budgeting and Accounting Act is to promote uniform budgets and to avoid deficit spending, not to afford security of employment. Any action under this statute must be initiated by the Attorney General, or the prosecuting attorney if assets are to be recovered.

3. The test regarding whether an individual has a private right of action to enforce a statute is whether the statute is designed to protect the public or the private sector. If the latter, then generally a private right of action exists. The federal courts have not abandoned the "especial benefit" test as the threshold factor in such a determination.

4. The management of local budgets is a matter of only state concern. The mere fact that federal courts may find a private right under a federal law does not mean that state courts must of necessity find a state right under a state law.

5. Plaintiffs did not assert that their taxes will be increased or that as taxpayers they will suffer any pecuniary loss as a result of the mayor's action, therefore, they do not have standing to sue as taxpayers.

Reversed.

1. MUNICIPAL CORPORATIONS — UNIFORM BUDGETING AND ACCOUNTING ACT — ACTIONS.

The substantive purposes of the Uniform Budgeting and Accounting Act are to provide a uniform budgeting system for local units of government and to prohibit deficit spending by a local unit; it is not the act's purpose to afford security of employment; any action under the act must be initiated by the Attorney General, or the prosecuting attorney where assets are sought to be recovered (MCL 141.421 et seq.; MSA 5.3228[21] et seq.).

2. ACTIONS — STATUTES — ENFORCEMENT OF STATUTES — PRIVATE RIGHT OF ACTION.

The mere fact that a statute designates a public official or body as its enforcer does not deprive an individual of a private right of action seeking its enforcement; the test to be applied is whether the statute is designed to protect the public or the private sector, and if the latter, then generally a private right of action exists.

3. STATUTES — ENFORCEMENT OF STATUTES — PRIVATE RIGHT OF ACTION — FEDERAL TEST — ESPECIAL BENEFITS.

The federal courts have not abandoned the "especial benefit" test

as the threshold factor to be considered in determining whether a private right of action exists for the enforcement of a statute.

4. ACTIONS — PRIVATE RIGHT OF ACTION — FEDERAL LAW — STATE
   LAW.
   The mere fact that federal courts may find a private right of action under a federal law does not mean that state courts must of necessity find a state right under a state law.

5. ACTIONS — MUNICIPAL CORPORATIONS — LOCAL BUDGETS — STATE
   LAW — FEDERAL LAW.
   The management of local budgets is a matter of only state concern, therefore, it would be inappropriate to infer a cause of action in this area based solely on federal law.

6. MUNICIPAL CORPORATIONS — TAXPAYER'S SUITS — INJUNCTIONS.
   Generally, a taxpayer, unless otherwise provided by statute, cannot sue to enjoin an illegal or unauthorized act on the part of a municipality unless such act will result in an increase of the taxpayer's taxes or will otherwise result in direct or indirect pecuniary injury to the taxpayer.

*Lawrence R. Green & Associates* (by *Lawrence R. Green),* and *Paul Mahinske,* of counsel, for plaintiffs.

*Walter S. Nussbaum, P.C.* (by *Walter S. Nussbaum, Marcia S. Nussbaum,* and *Mara Kalnins-Ghafari),* for intervening plaintiff.

*Donald Pailen,* Corporation Counsel, and *Honigman, Miller, Schwartz & Cohn* (by *James K. Robinson, Richard S. Soble,* and *Brian D. Figot),* special counsel to defendant, for defendants.

Before: T. M. BURNS, P.J., and MACKENZIE and R. E. ROBINSON,* JJ.

PER CURIAM. After adoption by the Detroit City Council of the city budget for the fiscal year ending June 30, 1984, the Honorable Coleman Young,

---

* Former circuit court judge, sitting on the Court of Appeals by assignment.

Mayor of the City of Detroit, faced with an excess of anticipated expenditures over anticipated revenues, and in order to avoid a budget deficit, implemented in late August of 1983 an austerity program which forced the layoff of personnel from various city departments, including 224 police officers. The individual plaintiffs herein are two of those officers. The Detroit Police Officers Association was permitted to intervene as a plaintiff.

The complaints allege that defendant, Mayor Young, implemented an amended budget without submitting such amended budget to the city council as required by law. Defendants characterize the mayor's action as a "savings plan", not a budget amendment.

Plaintiffs moved below for an order requiring the reinstatement of the laid-off officers, charging a violation of the Uniform Budgeting and Accounting Act, MCL 141.421 *et seq.;* MSA 5.3228(21) *et seq.* Defendants moved for accelerated judgment pursuant to GCR 1963, 116.1, subds (2), (3), (4), and (5), and for summary judgment pursuant to GCR 1963, 117.2, subds (1) and (3). The trial court denied defendants' motions and, treating plaintiffs' motion as one for summary judgment, granted it, on the ground that defendants had violated § 17 of the Uniform Budgeting and Accounting Act, MCL 141.437; MSA 5.3228(37). Defendants' motion for a stay of the trial court's order was denied by this Court and granted by the Michigan Supreme Court on November 4, 1983.

Although the individual plaintiffs claim a different basis for relief than does the intervening plaintiff, both claims come to this Court within the context of the Uniform Budgeting and Accounting Act.

Although defendants' appeal raises a variety of

issues, we address only one, as we believe it is dispositive of this suit.

*Do plaintiffs have standing, either as city employees or as city taxpayers, to bring this suit?*

We think not. The pertinent provisions of the Uniform Budgeting and Accounting Act state:

"Sec. 17. Except as otherwise provided in section 19, a deviation from the original general appropriations act shall not be made without amending the general appropriations act. The legislative body of the local unit shall amend the general appropriations act as soon as it becomes apparent that a deviation from the original general appropriations act is necessary and the amount of the deviation can be determined. An amendment shall indicate each intended alteration in the purpose of each appropriation item affected by the amendment. The legislative body may require that the chief administrative officer or fiscal officer provide it with periodic reports on the financial condition of the local unit. If, during a fiscal year, it appears to the chief administrative officer, or the fiscal officer in local units which have not elected or designated a chief administrative officer, or to the legislative body that the actual and probable revenues from taxes and other sources in a fund are less than the estimated revenues, including an available surplus upon which appropriations from the fund were based and the proceeds from bonds or other obligations issued under the fiscal stabilization act or the balance of the principal of these bonds or other obligations, the chief administrative officer or fiscal officer shall present to the legislative body recommendations which, if adopted, would prevent expenditures from exceeding available revenues for that current fiscal year. The recommendations shall include proposals for reducing appropriations from the fund for budgetary centers in a manner that would cause the total of appropriations to not be greater than the total of revised estimated revenues of the fund, or proposals for measures necessary to provide revenues sufficient to meet expenditures

of the fund, or both. The recommendations shall recognize the requirements of state law and the provisions of collective bargaining agreements." MCL 141.437; MSA 5.3228(37).

"Sec. 20. A violation of sections 17 to 19 by the chief administrative officer, the fiscal officer, an administrative officer, employee, or member of the legislative body of the local unit disclosed in an audit of the financial records and accounts of the local unit in the absence of reasonable procedures in use by the local unit to detect such violations shall be filed with the state treasurer and reported by the state treasurer to the attorney general. For local and intermediate school districts, the report of a violation shall be filed with the state superintendent of public instruction instead of the state treasurer. The attorney general shall review the report and initiate appropriate action against the chief administrative officer, fiscal officer, administrative officer, employee, or member of the legislative body. For the use and benefit of the local unit, the attorney general or prosecuting attorney may institute a civil action in a court of competent jurisdiction for the recovery of funds of a local unit, disclosed by an examination to have been illegally expended or collected as a result of malfeasance and not accounted for as provided in sections 17 to 19, and for the recovery of public property disclosed to have been converted or misappropriated." MCL 141.440; MSA 5.3228(40).

It is assumed, for purposes of this opinion, that the mayor's "savings plan" is in reality an attempt by him to amend the Detroit city budget without council approval.

The substantive purposes of the Uniform Budgeting and Accounting Act, as expressed in its title, are "* * * to provide a uniform budgeting system for local units; and to prohibit deficit spending by a local unit of government".

The mere fact that a statute designates a public official or body as its enforcer does not deprive an individual of a private right of action seeking its

enforcement. *Pompey v General Motors Corp,* 385 Mich 537, 557-559; 189 NW2d 243 (1971). The test as applied by both the federal and Michigan courts is whether the statute is designed to protect the public or the private sector. If the latter, then generally a private right of action exists. As early as 1916, the federal courts applied the test to find a private right under the Federal Safety Appliance Acts for an injured railroad employee. The purpose of the act, expressed in its title, was "to Promote the Safety of Employees and Travelers".

"A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover damages from the party in default is implied * * *." *Texas & Pacific R Co v Rigsby,* 241 US 33, 39; 36 S Ct 482; 60 L Ed 874 (1916).

The federal courts have continued to apply the "especial benefit" test in *Cort v Ash,* 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975), where the Court found no private right in a stockholder suing under a criminal statute prohibiting corporations from making expenditures in connection with federal elections; and in *Cannon v University of Chicago,* 441 US 677; 99 S Ct 1946; 60 L Ed 2d 560 (1979), where the Court found an implied private right of action under a federal law prohibiting sex discrimination.

The *Cannon* Court, as did its predecessors, implied the creation of the private right by looking to the language of the statute which provided *"[n]o person* in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program". 441 US 681-682. (Emphasis added.) The *Cannon* Court further rec-

ognized the special benefit test as the threshold factor to be considered among the four factors delineated in *Cort, supra.* The following comment sheds further light on the Court's reasoning:

"There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefitted class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices." *Cannon, supra,* pp 690-693.

Contrary to the opinion of the learned trial judge, the federal courts have not abandoned the "especial benefit" test as the threshold factor to be considered, in favor of the legislative intent test (the second factor established in *Cort, supra).* An examination of the cases relied on by him, *i.e., Northwest Airlines, Inc v Transport Workers Union of America, AFL-CIO,* 451 US 77; 101 S Ct 1571; 67 L Ed 2d 750 (1981), and *Middlesex County Sewerage Authority v National Sea Clammers Ass'n,* 453 US 1; 101 S Ct 2615; 69 L Ed 2d 435 (1981), reveals that in each case the Court first considered the "especial benefit" factor before considering the legislative intent factor.

We agree with the trial judge, however, that the mere fact that federal courts may find a private right under a federal law does not mean that state courts must of necessity find a state right under a state law. This is, in essence, the fourth factor considered in *Cort, supra:*

"And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer

a cause of action based solely on federal law?" *Cort, supra,* p 78.

And that is the case before us, there being no question but that the management of local budgets is a matter of only state concern.

The "especial benefit" test crops up early in Michigan law. In *Taylor v Lake Shore & M S R Co,* 45 Mich 74, 77; 7 NW 728 (1881), plaintiff sued under an ordinance requiring owners or occupants of realty to keep the adjoining sidewalks free of snow. The Court, examining the duty which the ordinance imposed on the owner, said:

"The nature of the duty and the benefits to be accomplished through its performance must generally determine whether it is a duty to the public in part or exclusively, or whether individuals may claim that it is a duty imposed wholly or in part for their especial benefit."

To like effect are *Sterling v Union Carbide Co,* 142 Mich 284; 105 NW 755 (1905), *Lepard v Michigan Central R Co,* 166 Mich 373; 130 NW 668 (1911), *Sorenson v Kalamazoo Auto Sales Co,* 201 Mich 318; 167 NW 982 (1918), *Bolden v Grand Rapids Operating Corp,* 239 Mich 318; 214 NW 241 (1927), and *Pompey v General Motors, supra.*

Defendants call attention to the so-called "disappointed bidder" cases wherein Michigan has routinely rejected the complaint of the losing bidder suing to enforce an ordinance which requires the municipality to accept the lowest responsible bid. The Court's rationale is that the loser is not within the class of persons intended to be benefitted by the legislation. See *Talbot Paving Co v Detroit,* 109 Mich 657; 67 NW 979 (1896), *Detroit v Wayne Circuit Judge,* 128 Mich 438; 87 NW 376

(1901), and *Attorney General ex rel Allis-Chalmers Co v Public Lighting Comm of Detroit,* 155 Mich 207; 118 NW 935 (1908), where the Court ruled that:

"[t]he proceeding [by the Attorney General] is the proper one to determine the question, and the only one by which any action could be taken. The public represented by the proper officer is the real complainant before the court." *Id.,* p 211.

It disturbs us that the plaintiffs and the intervening plaintiff's members are forced out of employment, but they are without standing to maintain this suit under the Uniform Budgeting and Accounting Act. Its purpose is to promote uniform budgets and to avoid deficit spending, not to afford security of employment. Any action under this statute must be initiated by the Attorney General (or the prosecuting attorney if assets are to be recovered). *Oleksy v Sisters of Mercy of Lansing, Michigan,* 74 Mich App 374; 253 NW2d 772 (1977).

Plaintiffs further cite several sections of the Detroit City Charter in support of their claim. The only sections which touch on the questions raised by plaintiffs are § 7-1103, which imposes on the Board of Police Commissioners the duty of reviewing and approving the departmental budget before its submission to the mayor, and § 7-1106, which empowers the police commissioner to discharge employees for disciplinary reasons. We find neither of these sections helpful in resolving the question of plaintiffs' standing in this suit.

It is also urged that the plaintiffs have standing to sue as taxpayers. Plaintiffs did not assert this claim in their complaint, but voice it for the first time in their appeal brief.

There are many cases where taxpayer suits have

been maintained, and the trial judge makes this point in his opinion. The attitude of courts in general toward taxpayer suits is set forth in 18 McQuillin, Municipal Corporations (3d ed), § 52.13, p 24:

"it is generally held, unless otherwise provided by statute, that a taxpayer cannot sue to enjoin an illegal or unauthorized act on the part of a municipality unless such act will result in an increase of his taxes or will otherwise result in direct or indirect pecuniary injury to him."

This is the view adopted by the Michigan Courts: *Nichols v State Administrative Board,* 338 Mich 617; 62 NW2d 103 (1954), *Menendez v Detroit,* 337 Mich 476; 60 NW2d 319 (1953), *Grand Rapids Independent Publishing Co v Grand Rapids,* 335 Mich 620; 56 NW2d 403 (1953), and *Kaminskas v Detroit,* 68 Mich App 499; 243 NW2d 25 (1976), *lv den* 399 Mich 826 (1977). Plaintiffs nowhere assert that their taxes will be increased or that as taxpayers they will suffer any pecuniary loss as a result of the mayor's action.

We should not end this discussion without recognizing *Slavin v Detroit,* 262 Mich 173; 247 NW 145 (1933). Defendants cite this case in support of their position that there was no common-law remedy available to plaintiffs before the enactment of the Uniform Budgeting and Accounting Act. Since *Slavin* was heard on its merits, it could be argued that it does in fact point to the existence of a common-law remedy prior to adoption of the Uniform Budgeting and Accounting Act. We note, however, that the question of whether plaintiffs had standing to sue was not raised or decided in that case.

Reversed. No costs, a public question being involved.