GROSSE ILE COMMITTEE FOR LEGAL TAXATION v GROSSE ILE
TOWNSHIP

Docket Nos. 63042, 63337. Submitted March 3, 1983, at Detroit.—
Decided October 10, 1983. Leave to appeal applied for.

The Grosse Ile Committee for Legal Taxation (hereinafter plain-
tiff), the assumed name for three individual residents of the
Township of Grosse Ile, filed an action in Wayne Circuit Court
against the Township of Grosse Ile, the Grosse Ile Board of
Education, and the Wayne County Bureau of Taxation, alleging
that the aggregate ad valorem taxes in the Township of Grosse
Ile exceeded the 50-mill limitation contained in Const 1963, art
9, § 6 and seeking a writ of mandamus, a permanent injunction
against the further imposition of such excess taxes, and a "roll-
back" of all excess taxes by means either of repayment of the
excess to township residents or credit of such excesses against
future tax liabilities. Defendants moved for accelerated and
summary judgment. Michael L. Stacey, J., granted accelerated
judgment on the basis that exclusive jurisdiction over plaintiff's
claims was in the Michigan Tax Tribunal and that plaintiff
failed to exhaust its administrative remedies before the Tax
Tribunal.

Plaintiff then filed a petition with the Michigan Tax Tribunal
naming the above noted defendants in the circuit court action

REFERENCES FOR POINTS IN HEADNOTES
[1, 9-14] 71 Am Jur 2d, State and Local Taxation §§ 126, 141.
[1, 2] 72 Am Jur 2d, State and Local Taxation § 787.
[1] 74 Am Jur 2d, Taxpayers' Actions § 50.
[2] 2 Am Jur 2d, Administrative Law §§ 328, 556, 732.
[3, 5] 74 Am Jur 2d, Taxpayers' Actions §§ 1, 3.
[4] 59 Am Jur 2d, Parties §§ 26, 27.
[5] 59 Am Jur 2d, Parties § 30.
    74 Am Jur 2d, Taxpayers' Actions § 16.
[6] 16 Am Jur 2d, Constitutional Law § 111.
[7] 16 Am Jur 2d, Constitutional Law § 128.
[8] 16 Am Jur 2d, Constitutional Law § 53.
[11-14] 71 Am Jur 2d, State and Local Taxation § 140.
[12-14] 68 Am Jur 2d, Schools § 83.
[14] 68 Am Jur 2d, Schools § 81.

plus the Wayne County Board of Commissioners as respondents. The petition made the same allegations and sought the same relief as in the circuit court action, but, additionally, requested an order of mandamus requiring the Wayne County Board of Commissioners henceforth to determine whether the taxes contained in the report of the Wayne County Bureau of Taxation were legal or illegal and to approve and apportion only those taxes which were not in excess of the constitutional limitation. Plaintiff thereafter moved to add Wayne County Community College, Huron-Clinton Metropolitan Authority, Wayne County Intermediate School District, and Wayne County as respondents. Without deciding the motion to add parties, the Tax Tribunal *sua sponte* dismissed the petition on the basis that, since Const 1963, art 9, § 6 was amended to incorporate the provisions of the so-called Headlee amendment, Const 1963, art 9, §§ 25-34, and said amendment provided that exclusive review and enforcement of the provisions of the Headlee amendment shall lie in the Court of Appeals, the Tax Tribunal lacked subject matter jurisdiction over the questions raised in the petition. Plaintiff appealed from that order of dismissal by leave granted.

During the pendency of the application for a delayed appeal from the Tax Tribunal's dismissal, plaintiff filed a complaint for mandamus in the Court of Appeals. Named as defendants were both the named respondents in the Tax Tribunal proceedings and those parties whom plaintiff sought to add as respondents in the Tax Tribunal proceedings. The allegations pled and the relief sought in the complaint for mandamus in the Court of Appeals were similar to those pled and sought in the complaint in circuit court and the petition in the Tax Tribunal. The Court of Appeals consolidated for consideration the mandamus action and the appeal from the Tax Tribunal. *Held:*

1. The nature of plaintiff's claim in the Tax Tribunal was that the total property tax levy in the Township of Grosse Ile exceeded the 50-mill limitation contained in Const 1963, art 9, § 6. A determination of that claim fell within the statutory jurisdiction of the Tax Tribunal. Neither the pleading of the provisions of the so-called Headlee amendment as an affirmative defense nor the necessity of considering the provisions of that constitutional amendment in its resolution of plaintiff's claim acted to divest the Tax Tribunal of subject matter jurisdiction.

2. While plaintiff committee does not have standing to raise the question of the propriety of the taxes being levied since it is not a taxpayer, the individual members of the committee would

have standing if they were taxpayers. On remand, the Tax Tribunal shall permit the individual members of the committee to amend the pleadings so that the pleadings are in their individual names as taxpayers.

3. The so-called Headlee amendment did not abolish the 50-mill limitation contained in Const 1963, art 9, § 6 and replace it with electorate approval, rather that amendment, with respect to the provisions providing exceptions to the 50-mill limitation, added the new requirement that any new or increased taxes must have voter approval. Accordingly, a township may not impose aggregate taxes which exceed the 50-mill limitation contained in Const 1963, art 9, § 6.

4. The Tax Tribunal is the proper forum to determine whether the taxes levied in the Township of Grosse Ile exceed the 50-mill limitation contained in Const 1963, art 9, § 6. Plaintiff's request for injunctive relief and a writ of mandamus is denied, as such relief is not appropriate at this time.

5. The statutory 1/4 mill levied by the Huron-Clinton Metropolitan Authority is exempted from the 50-mill limitation pursuant to the exemption provisions of Const 1963, art 9, § 6.

6. The Wayne County Community College is, by statute, entitled to levy 1/4 mill as a charter millage. That charter millage is, pursuant to the exemption provisions of Const 1963, art 9, § 6, exempt from the 50-mill limitation.

7. The millage levied by the Wayne County Community College and the Wayne County Intermediate School District for debt service is exempt from the 50-mill limitation.

8. The one-mill tax levy by the Wayne County Intermediate School District for special education is a charter millage which is exempt from the 50-mill limitation.

9. A determination of the question of how the taxes shall be rolled back if it is determined that the nonexempt taxes exceed the 50-mill limitation should await resolution of the factual question of whether the 50-mill limitation has been exceeded.

10. On remand, the township may renew its motion for dismissal on the basis of the running of the statutory period of limitation in which to bring these proceedings.

Remanded to the Tax Tribunal.

1. TAXATION — TAX TRIBUNAL — CONSTITUTIONAL LAW — "HEADLEE" AMENDMENT — JURISDICTION.

The Michigan Tax Tribunal has jurisdiction to determine a taxpayer claim that the tax rate levied exceeds the 50-mill limitation contained in the Michigan Constitution even where the so-called Headlee amendment to the constitution, which

has a provision that a suit to enforce the provisions of that amendment shall be brought in the Court of Appeals, is raised as an affirmative defense and the provisions of that amendment must be interpreted to resolve the question; neither the pleading of the Headlee amendment as an affirmative defense nor the necessity of reliance upon the provisions of the Headlee amendment to resolve the question of violation of the constitutional tax-rate limitation section serve to remove from the Tax Tribunal its jurisdiction to determine the tax-rate question.

2. TAXATION — TAX TRIBUNAL — CONSTITUTIONAL LAW — APPEAL.

Issues involving constitutional questions may be raised before the Tax Tribunal; review of the Tax Tribunal's determination on such questions is by an appeal as of right to the Court of Appeals.

3. ACTIONS — STANDING — TAXPAYERS — TAX TRIBUNAL.

A committee composed of persons who are taxpayers but which is not itself a taxpayer does not have standing to bring in its own name a taxpayer suit before the Tax Tribunal, even if the individual members of the committee would have standing to bring a taxpayer action in the Tax Tribunal in their individual names.

4. WORDS AND PHRASES — STANDING — INTEREST IN LITIGATION — ADVOCACY.

Standing is the legal term used to denote the existence of a party's interest in the outcome of litigation, an interest that will assure sincere and vigorous advocacy.

5. ACTIONS — STANDING — TAXPAYERS.

A private citizen, traditionally, has no standing to vindicate a public wrong or enforce a public right where he is not hurt in any manner differently than the citizenry at large; accordingly, a taxpayer has no standing to challenge the expenditure of public funds where the threatened injury to him is no different than that to taxpayers generally; however, a taxpayer does have standing to challenge a tax where he can show that he will sustain susbstantial injury, loss or damage as a taxpayer through increased taxation and its consequences.

6. CONSTITUTIONAL LAW — JUDICIAL CONSTRUCTION — COMMON UNDERSTANDING.

The primary rule of construction of a constitution is the rule of "common understanding"; the interpretation that should be given to the language of a constitutional provision is that

which reasonable minds, the great mass of the people themselves, would give to that language.

7. Constitutional Law — Judicial Construction — Circumstances of Adoption.

A rule of construction of a constitution is that, to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered.

8. Constitutional Law — Judicial Construction — Presumptions.

The framers of a constitutional amendment are presumed to have been aware of existing laws and court decisions and to have drafted the amendment accordingly.

9. Constitutional Law — Taxation — "Headlee" Amendment.

The ultimate purpose of the so-called Headlee tax limitation amendment to the Michigan Constitution was to place public spending under direct popular control (Const 1963, art 9, §§ 25-34).

10. Constitutional Law — Taxation — "Headlee" Amendment — Limitation of Taxes.

The so-called Headlee tax limitation amendment to the Michigan Constitution did not abolish the 50-mill tax limitation contained in the Michigan Constitution and replace it with approval by the electorate; with respect to the constitutional exception to the 50-mill limitation of taxes imposed by a city, village, charter county, charter township, charter authority, or other authority where a tax limitation was provided by the charter or by general law, the amendment provided that any new or increased taxes subject to the exception would require approval by the electorate (Const 1963, art 9, §§ 6, 25-34).

11. Taxation — Huron-Clinton Metropolitan Authority — Limitation of Taxes — Constitutional Law.

The Huron-Clinton Metropolitan Authority is a public quasi-corporation which has the statutory power to levy taxes not to exceed 1/4 mill upon each dollar of the assessed value of the property within the district; the tax so levied within that statutory limitation is exempted from the 50-mill limitation on taxation contained in the Michigan Constitution (Const 1963, art 9, § 6; MCL 119.57; MSA 5.2148[7]).

12. Taxation — Community Colleges — Charter Taxes — Limitation of Taxes — Constitutional Law.

A community college is a chartered authority; accordingly, the 1/

4-mill charter tax allocation pursuant to the Property Tax Allocation Act is exempt from the 50-mill limitation on taxation contained in the Michigan Constitution (Const 1963, art 9, § 6; MCL 211.211[d], 389.191; MSA 7.71[d], 15.615[1191]).

13. TAXATION — COMMUNITY COLLEGES — INTERMEDIATE SCHOOL DISTRICTS — DEBT SERVICE — LIMITATION OF TAXES — CONSTITUTIONAL LAW.

A tax levy by a community college or an intermediate school district for debt service is exempt from the 50-mill limitation on taxation contained in the Michigan Constitution (Const 1963, art 9, § 6).

14. TAXATION — INTERMEDIATE SCHOOL DISTRICTS — SPECIAL EDUCATION — LIMITATION OF TAXES — CONSTITUTIONAL LAW.

A tax levy established by a vote of the electorate for the special education budget of an intermediate school district is a charter tax which is exempt from the 50-mill tax limitation contained in the Michigan Constitution (Const 1963, art 9, § 6; MCL 380.1726[3]; MSA 15.41726[3]).

*Joselyn, Rowe, Jamieson, Grinnan, Callahan & Hayes, P.C.* (by *James A. Callahan*), for plaintiff.

*Burley, Smiertka, Swank & Misko, P.C.* (by *Thomas J. Misko*), for Township of Grosse Ile.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *George N. Bashara, Jr.,* and *Michael P. O'Rourke*), for Grosse Ile Board of Education.

*George H. Cross,* Corporation Counsel, and *Robert G. Schuch,* Assistant Corporation Counsel, for Wayne County Bureau of Taxation, Wayne County Board of Commissioners and Wayne County.

*Miller, Canfield, Paddock & Stone* (by *Larry J. Saylor*), for Wayne County Community College, Huron-Clinton Metropolitan Authority and Wayne County Intermediate School District.

Before: BEASLEY, P.J., and V. J. BRENNAN and WAHLS, JJ.

V. J. BRENNAN, J. Plaintiff[1] appeals by leave granted from an order by the Michigan Tax Tribunal, which *sua sponte* dismissed plaintiff's complaint for lack of subject matter jurisdiction. (Case No. 63042.) Plaintiff has also filed a complaint for mandamus with this Court to compel defendant Wayne County Board of Commissioners to review the Grosse Ile Township tax rate and to lower those rates to comply with the millage limitations established by Const 1963, art 9, § 6. (Case No. 63337.)

Plaintiff began an action in the Wayne County Circuit Court with a complaint which sought relief from aggregate taxes which exceeded the 50-mill limitation of Const 1963, art 9, § 6. In the complaint, plaintiff described itself as "an assumed name for residents of the Township of Grosse Ile, residing in Wayne County State of Michigan", and requested an injunction against defendants Wayne County Bureau of Taxation and Township of Grosse Ile to prevent them from imposing excess taxes on Grosse Ile Township residents. In addition, plaintiff sought a "roll-back" of all excess taxes, repayment to Grosse Ile Township residents of any excess taxes (or, alternatively, credits on future tax assessments), and any other equitable and legal relief deemed proper by the circuit court.

The various defendants individually moved for summary and accelerated judgments against plaintiff, alleging, among other things, that plaintiff's action in circuit court was premature because plaintiff had failed to exhaust its administrative remedies (*i.e.,* file with the Tax Tribunal) and that

[1] While the parties before the Tax Tribunal should technically be denominated as petitioner and respondents, to avoid confusion, the terms plaintiff and defendants will be used to designate the respective parties in each of the three forums in which the proceedings involved herein were commenced.

plaintiff lacked standing to pursue its action because plaintiff is not a taxpayer. On October 15, 1981, the circuit court dismissed plaintiff's case because it was premature, plaintiff having failed to exhaust its administrative remedies by filing its action with the Tax Tribunal, which the court found had exclusive jurisdiction over plaintiff's action.

On November 2, 1981, plaintiff filed a petition with the Tax Tribunal, again seeking a writ of mandamus against the Wayne County Board of Commissioners and a permanent injunction forbidding the imposition of any taxes in excess of the 50-mill limitation of Const 1963, art 9, § 6, as to all the defendants. Prior to the Tax Tribunal's ruling, plaintiff moved to add as parties defendant: Wayne County Community College, Huron-Clinton Metropolitan Authority, Wayne County Intermediate School District, and Wayne County as parties defendants. This motion was apparently never addressed by the Tax Tribunal, because on February 4, 1982, the Tax Tribunal *sua sponte* ordered plaintiff's case dismissed. The Tax Tribunal found that, although plaintiff limited its claim to a violation of Const 1963, art 9, § 6, the claim necessarily implicated Const 1963, art 9, §§ 25-34 (the "Headlee amendment"). The Tax Tribunal then found that, under the Headlee amendment, "exclusive and original jurisdiction over an appeal to enforce the limitations provisions of Sections 25 through 34 of Article 9 rests within the Michigan Court of Appeals".

In its appeal to this Court, plaintiff included the four "new" defendants mentioned above as parties defendant, but did not allege any different violation of the law or seek any new relief against these defendants. This Court granted plaintiff's

application for delayed appeal from the Tax Tribunal's order of dismissal and also issued an order to all the defendants to show cause why the relief sought by plaintiff should not be granted. In the same order, the application for delayed appeal (Case No. 63042) was consolidated with the complaint for mandamus (Case No. 63337).

We first discuss the jurisdictional aspects of this case, because both the circuit court and the Tax Tribunal dismissed this case on the basis of lack of subject matter jurisdiction. The circuit court found that the Tax Tribunal had exclusive jurisdiction over plaintiff's claim, and the Tax Tribunal found that this Court had exclusive jurisdiction.

In its complaint in the circuit court and its petition in the Tax Tribunal, plaintiff sought injunctive relief to prevent defendants from imposing taxes in excess of the 50-mill limitation of Const 1963, art 9, § 6. In response to this allegation, several of the defendants raised the affirmative defense that the Headlee amendment, Const 1963, art 9, §§ 25-34, amended the constitution to permit townships and various other governmental entities to exceed the 50-mill limitation, provided a majority of the electors in the district had approved the increase. Although plaintiff vehemently denied that it was raising a claim that the Headlee amendment had been violated, the Tax Tribunal dismissed plaintiff's cause of action because it found that the Headlee amendment was implicated. Under the Headlee amendment, Const 1963, art 9, § 32, "[a]ny taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 34". The Tax Tribunal interpreted this as providing for exclusive original jurisdiction over Headlee amendment claims in the Court of Appeals.

We agree with the plaintiff and defendants Huron-Clinton Metropolitan Authority, Wayne County Community College, and Wayne County Intermediate School District in their contention that plaintiff's action is limited only to a claim that the total property tax levy within the township of Grosse Ile exceeds the 50-mill limitation set forth in Const 1963, art 9, § 6. The argument raised by the other defendants that Const 1963, art 9, § 31 provides an exception to the 50-mill limitation of § 6, where a tax increase is voter approved, is merely an affirmative defense and does not form the basis for jurisdiction under Const 1963, art 9, § 32. The fact that those sections must be interpreted in order to resolve plaintiff's claim does not mean that plaintiff has, in fact, alleged a violation of the Headlee amendment. Thus, the appropriate inquiry is whether the circuit court or the Tax Tribunal had original jurisdiction over plaintiff's action which alleged a violation of Const 1963, art 9, § 6.

Although this case ultimately involves a determination of whether the 50-mill limitation in Const 1963, art 9, § 6, has been modified or eliminated by the passage of the Headlee amendment, we find that jurisdiction was originally within the Tax Tribunal. See MCL 205.731; MSA 7.650(31). Where individual property owners contest the legality of the tax bills they receive, the Legislature intended such matters to be heard in the Tax Tribunal. Further, constitutional issues may be raised before the Tax Tribunal with appeal as of right to the Court of Appeals. *Henshaw v State Tax Comm,* 92 Mich App 585, 588; 285 NW2d 382 (1979).

Next, we address the question of whether the plaintiff has standing to bring these actions. Plain-

tiff is the assumed name for three individual residents of the Township of Grosse Ile. In each of these proceedings, most of the eight defendants have challenged plaintiff's right to seek injunctive relief because plaintiff is not itself a taxpayer. At no time has plaintiff responded to these challenges, and plaintiff has apparently declined to amend its pleadings so as to name as plaintiffs individual taxpayers.

Assuming that the plaintiff committee is composed of individual taxpayers, we believe that, although the committee does not have standing to bring these actions, the individual taxpayers would have standing to pursue the proceedings authorized by the Tax Tribunal Act, MCL 205.701 *et seq.;* MSA 7.650(1) *et seq.* In addition, the individual taxpayers would have "traditional taxpayer standing" to pursue such proceedings. Standing is the legal term used to denote the existence of a party's interest in the outcome of a litigation; an interest that will assure sincere and vigorous advocacy. *Michigan License Beverage Ass'n v Behnan Hall, Inc,* 82 Mich App 319, 324; 266 NW2d 808 (1978). Traditionally, a private citizen has no standing to vindicate a public wrong or enforce a public right where he is not hurt in any manner differently than the citizenry at large. *Inglis v Public School Employees Retirement Board,* 374 Mich 10; 131 NW2d 54 (1964). Therefore, a taxpayer has no standing to challenge the expenditure of public funds where the threatened injury to him is no different than that to taxpayers generally. *Massachusetts v Mellon,* 262 US 447; 43 S Ct 597; 67 L Ed 1078 (1923); *Waterford School Dist v State Bd of Ed,* 98 Mich App 658, 662; 296 NW2d 328 (1980). The taxpayer must show a threat that the taxpayer will sustain substantial

injury, loss, or damage as a taxpayer through increased taxation and its consequences. Some special grievance must be shown. *Menendez v Detroit,* 337 Mich 476, 482; 60 NW2d 319 (1953). Therefore, in the instant case, the individual taxpayers would have standing because they have alleged that their taxes will increase or decrease a specific amount depending upon the outcome of this litigation. At this juncture, we will not dismiss plaintiff's action for lack of standing. Since we hereinafter remand this case, the individual taxpayers shall be permitted to file amended pleadings in the names of the individual taxpayers. Otherwise, defendants may renew their motions to dismiss on the basis of lack of standing.

We now address the merits of the plaintiff's claim that the defendant's imposition of taxes in excess of the 50-mill limitation in Const 1963, art 9, § 6 is unconstitutional. Also, we will address the merits of the defendants' claim that the Headlee amendment, Const 1963, art 9, §§ 25-34, amended the constitution to permit townships and various other governmental entities to exceed the 50-mill limitation if a majority of the electors in the district approved of the increase.

Prior to the Headlee amendment, Const 1963, art 9, § 6, stated:

"Sec. 6. Except as otherwise provided in this constitution, the total amount of general ad valorem taxes imposed upon real and tangible personal property for all purposes in any one year shall not exceed 15 mills on each dollar of the assessed valuation of property as finally equalized. Under procedures provided by law, which shall guarantee the right of initiative, separate tax limitations for any county and for the townships and for school districts therein, the aggregate of which shall not exceed 18 mills on each dollar of such valuation, may be adopted and thereafter altered by the vote

of a majority of the qualified electors of such county voting thereon, in lieu of the limitation hereinbefore established. These limitations may be increased to an aggregate of not to exceed 50 mills on each dollar of valuation, for a period of not to exceed 20 years at any one time, if approved by a majority of the electors, qualified under Section 6 of Article II of this constitution, voting on the question.

"The foregoing limitations shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidences of indebtedness or for the payment of assessments or contract obligations in anticipation of which bonds are issued, which taxes may be imposed without limitation as to rate or amount; or to taxes imposed for any other purpose by any city, village, charter county, charter township, charter authority or other authority, the tax limitations of which are provided by charter or by general law."

Plaintiff contends that aggregate taxes imposed by the Township of Grosse Ile exceed the 50-mill limitation set forth in § 6. Defendants, on the other hand, contend that the Headlee amendment abolished the 50-mill limitation of § 6 and provides that the 50-mill limitation may be exceeded with voter approval.

In 1978, the voters ratified the Headlee amendment, Const 1963, art 9, §§ 25-34, which includes the following:

"Sec. 25. *Property taxes and other local taxes and state taxation and spending may not be increased above the limitations specified herein without direct voter approval.* The state is prohibited from requiring any new or expanded activities by local governments without full state financing, from reducing the proportion of state spending in the form of aid to local governments, or from shifting the tax burden to local government. A provision for emergency conditions is established and the repayment of voter approved bonded indebtedness is

guaranteed. Implementation of this section is specified in Sections 26 through 34, inclusive, of this Article.

"Sec. 26. There is hereby established a limit on the total amount of taxes which may be imposed by the legislature in any fiscal year on the taxpayers of this state. This limit shall not be changed without approval of the majority of the qualified electors voting thereon, as provided for in Article 12 of the Constitution. Effective with fiscal year 1979-1980, and for each fiscal year thereafter, the legislature shall not impose taxes of any kind which, together with all other revenues of the state, federal aid excluded, exceed the revenue limit established in this section. The revenue limit shall be equal to the product of the ratio of Total State Revenues in fiscal year 1978-79 divided by the Personal Income of Michigan in calendar year 1977 multiplied by the Personal Income of Michigan in either the prior calendar year or the average of Personal Income of Michigan in the previous three calendar years, whichever is greater.

"For any fiscal year in the event that Total State Revenues exceed the revenue limit established in this section by 1% or more, the excess revenues shall be refunded pro rata based on the liability reported on the Michigan income tax and single business tax (or its successor tax or taxes) annual returns filed following the close of such fiscal year. If the excess is less than 1%, this excess may be transferred to the State Budget Stabilization Fund.

"The revenue limitation established in this section shall not apply to taxes imposed for the payment of principal and interest on bonds, approved by the voters and authorized under Section 15 of this Article, and loans to school districts authorized under Section 16 of this Article.

"If responsibility for funding a program or programs is transferred from one level of government to another, as a consequence of constitutional amendment, the state revenue and spending limits may be adjusted to accommodate such charge, provided that the total revenue authorized for collection by both state and local governments does not exceed that amount which would have been authorized without such change.

"Sec. 27. The revenue limit of Section 26 of this Article may be exceeded only if all of the following conditions are met: (1) The governor requests the legislature to declare an emergency; (2) the request is specific as to the nature of the emergency, the dollar amount of the emergency, and the method by which the emergency will be funded; and (3) the legislature thereafter declares an emergency in accordance with the specific [sic] of the governor's request by a two-thirds vote of the members elected to and serving in each house. The emergency must be declared in accordance with this section prior to incurring any of the expenses which constitute the emergency request. The revenue limit may be exceeded only during the fiscal year for which the emergency is declared. In no event shall any part of the amount representing a refund under Section 26 of this Article be the subject of an emergency request.

\* \* \*

"Sec. 31. *Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon.* If the definition of the base of an existing tax is broadened, the maximum authorized rate of taxation on the new base in each unit of Local Government shall be reduced to yield the same estimated gross revenue as on the prior base. If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the General Price Level from the previous year, the maximum authorized rate applied thereto in each unit of Local Government shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the General Price Level, as could have been collected at the existing authorized rate on the prior assessed value.

"The limitations of this section shall not apply to taxes imposed for the payment of principal and interest

on bonds or other evidence of indebtedness or for the payment of assessments on contract obligations in anticipation of which bonds are issued which were authorized prior to the effective date of this amendment.

\*   \*   \*

"Sec. 33. Definitions. The definitions of this section shall apply to Section 25 through 32 of Article IX, inclusive.

" 'Total State Revenues' includes all general and special revenues, excluding federal aid, as defined in the budget message of the governor for fiscal year 1978-1979. Total State Revenue shall exclude the amount of any credits based on actual tax liabilities or the imputed tax components of rental payments, but shall include the amount of any credits not related to actual tax liabilities. 'Personal Income of Michigan' is the total income received by persons in Michigan from all sources, as defined and officially reported by the United States Department of Commerce or its successor agency. *'Local Government' means any political subdivision of the state, including, but not restricted to, school districts, cities, villages, townships, charter townships, counties, charter counties, authorities created by the state, and authorities created by other units of local government.* 'General Price Level' means the Consumer Price Index for the United States as defined and officially reported by the United States Department of Labor or its successor agency." (Emphasis added.)

At the time the voters ratified the Headlee amendment, they also ratified an amendment to § 6 as indicated by the following emphasized language:

"Section 6. Except as otherwise provided in this constitution, the total amount of general ad valorem taxes imposed upon real and tangible personal property for all purposes in any one year shall not exceed 15 mills on each dollar of the assessed valuation of property as finally equalized. Under procedures provided by law, which shall guarantee the right of initiative, separate tax limitations for any county and for the townships

and for school districts therein, the aggregate of which shall not exceed 18 mills on each dollar of such valuation, may be adopted and thereafter altered by the vote of a majority of the qualified electors of such county voting thereon, in lieu of the limitation hereinbefore established. These limitations may be increased to an aggregate of not to exceed 50 mills on each dollar of valuation, for a period of not to exceed 20 years at any one time, if approved by a majority of the electors, qualified under Section 6 of Article II of this constitution, voting on the question.

"The foregoing limitations shall not apply to taxes imposed for the payment of principal and interest on bonds *approved by the electors* or other evidences · of indebtedness *approved by the electors* or for the payment of assessments or contract obligations in anticipation of which bonds are issued *approved by the electors,* which taxes may be imposed without limitation as to rate or amount; *or, subject to the provisions of section 25 through 34 of this article,* to taxes imposed for any other purpose by any city, village, charter county, charter township, charter authority or other authority, the tax limitations of which are provided by charter or by general law." (Emphasis added.)

Plaintiff contends that the Headlee amendment imposed *additional* limitations on municipalities and local governmental units, while defendants argue that the Headlee amendment abolished the old 50-mill limitation of § 6 and replaced it with an entirely new one—elector approval.

The primary rule for the construction of constitutional provisions is that of "common understanding". The interpretation that should be given is that which reasonable minds, the great mass of people, would arrive at. A second rule is that, to clarify the meaning of a provision of the constitution, the circumstances surrounding the adoption of the constitutional provision and the purpose sought to be accomplished may be considered.

*Traverse City School Dist v Attorney General,* 384
Mich 390, 405; 185 NW2d 9 (1971). Moreover, the
framers of a provision of the constitution must be
presumed to have been aware of existing laws and
court decisions and to have drafted accordingly.
*Saginaw City Council v Saginaw Policemen &
Firemen Retirement System Trustees,* 321 Mich
641, 647; 32 NW2d 899 (1948).

In *Waterford School Dist v State Bd of Ed,* 98
Mich App 658, 663; 296 NW2d 328 (1980), this
Court found that: "The Headlee Amendment grew
out of the spirit of 'tax revolt' and was designed to
place specific limitations on state and local reve-
nues. The ultimate purpose was to place public
spending under direct popular control."

After careful consideration, we find that the
Headlee amendment left the former 15-mill, 18-
mill, and 50-mill limitations of § 6 intact, and
merely added an additional restriction to § 6. No-
where in the language of the Headlee amendment
is there any indication that the already existing
limitations contained in § 6 were to be abolished.
A comparison of § 6 before and after the Headlee
amendment had been ratified reveals that the
Headlee amendment merely added new limita-
tions. Prior to the Headlee amendment, the 15-
mill, 18-mill, and 50-mill limitations applied to all
units of government with two major exceptions.
The first exception was for any of those units of
government when taxes were imposed "for the
payment of principal and interest on bonds or
other evidences of indebtedness". The second ex-
ception was for taxes imposed for any other pur-
pose by any city, village, charter county, charter
township, charter authority, or other authority,
the tax limitations of which are provided by char-
ter or by general law. *Butcher v Grosse Ile Twp,*

387 Mich 42, 65; 194 NW2d 845 (1972). After the Headlee amendment had been ratified, the "charter" exceptions were limited for the first time by the necessity of gaining electorate approval for new or increased taxes. Const 1963, art 9, § 6, *supra.* Thus, it appears that the only effect the Headlee amendment had upon § 6 was to impose the additional requirement of electorate approval before the exceptions to the 50-mill limitation would be operative. There is no indication that the Headlee amendment had any other effect upon the 50-mill limitation provision contained in § 6.

Furthermore, because the amendment of § 6 was made at the time other provisions of the Headlee amendment were added the specific reference to the other provisions of the Headlee amendment applied only to the "charter" exception to the limitations contained in § 6, and the language in § 6 which sets forth the limitations was not also amended, we are unpersuaded by the defendants' argument that the Headlee amendment abolished the 50-mill limitation contained in § 6. It is clear to us that the framers of the Headlee amendment were well aware of the existing language of § 6; and, because no amendment concerning the limitations contained in § 6 was proposed, we find that the Headlee amendment did not abolish the 50-mill limitation.

Thus, we hold that it is unconstitutional for the Township of Grosse Ile to impose aggregate taxes that exceed the 50-mill limitation set forth in § 6. However, a factual determination as to whether the taxes imposed by the township exceed the 50-mill limitation has never been made. We find that this determination should be made by the Tax Tribunal. Public policy favors resolution of tax questions by an expert body such as the Tax

Tribunal. Therefore, this case is remanded to the Tax Tribunal for further proceedings consistent with this opinion. Plaintiff's request for injunctive relief and/or a writ of mandamus is denied because it is not appropriate at this time.

Next, we address an issue raised by defendants Huron-Clinton Metropolitan Authority, Wayne County Community College, and Wayne County Intermediate School District. The aforementioned defendants claim that plaintiff has failed to state a cause of action on which relief can be granted with respect to these three defendants because each is exempted from the 50-mill limitation of Const 1963, art 9, § 6. We agree.

As defendant Huron-Clinton Metropolitan Authority states in its brief, the Metropolitan Authority is a public quasi-corporation. *Advisory Opinion re Constitutionality of PA 1966, No 346,* 380 Mich 554, 568-569; 158 NW2d 416 (1968). MCL 119.57; MSA 5.2148(7) provides that a tax of not more than 1/4 mill may be levied for the purpose of the Metropolitan Authority. Because it is an authority, the Huron-Clinton Metropolitan Authority is excepted from the 50-mill limitation of Const 1963, § 6.

The Wayne County Community College (WCCC) is likewise excepted from the 50-mill limitation of § 6. The Community College Act, MCL 389.1 *et seq.;* MSA 15.615(101) *et seq.,* states that the act is to be construed as being "the charter of community colleges established and operating hereunder, and as determining the tax limitation of such colleges in accordance with section 6 of article 9 of the constitution". MCL 389.191; MSA 15.615(1191). From this, the Attorney General has concluded that the charter millage (a 1/4-mill allocation) is outside the 50-mill limitation of Const 1963, art 9,

§ 6. OAG, 1981-1982, No 5866, p 87 (April 7, 1981). We agree with the Attorney General's conclusion.

Defendant WCCC also states that it levies .60 mill for debt service. If this is true, this millage is also outside the limitations of Const 1963, art 9, § 6 because it is a tax "imposed for the payment of principal and interest on bonds". *West Shore Community College v Manistee County Board of Comm'rs,* 389 Mich 287, 297-298; 205 NW2d 441 (1973).

Defendant Wayne County Intermediate School District currently levies a total of 1.1 mills, of which .07 is excepted as debt service. One mill is levied for special education and is specifically defined as *charter* millage by MCL 380.1726(3); MSA 15.41726. Further, a .03 mill is made for the school district's operating expenses. This portion of the levy is explicitly included in the 15-mill levy permitted by Const 1963, art 9, § 6. MCL 380.624(4); MSA 15.4624(4). However, under the Property Tax Limitation Act, MCL 211.211; MSA 7.71, the school district is guaranteed a tax rate of at least 1/10 of a mill; the .03 is clearly within this portion.

Upon remand, the above named defendants shall be permitted to renew their motions to dismiss.

Finally, we note that the Grosse Ile Board of Education raises an issue concerning a possible "roll-back" of taxes if it is determined that the 50-mill limitation applies and a factual determination is made that the limitation is exceeded. The board argues that the proper method for determining how the excess millage is to be rolled back is a pro-rata roll-back; that is, all units of the government would absorb a proportionate amount of the amount rolled back. The only other party that addresses this question is defendant Township of

Grosse Ile. The township maintains that the last governmental unit to receive voter approval or authorization to levy extra voted millage must reduce its current levy sufficiently to bring the aggregate millage below the 50-mill level. The township proposed a last in, first out (LIFO) method. Because it has not yet been determined whether the 50-mill limitation has been exceeded, and because not all of the interested parties have addressed this issue, we decline to decide this issue now.

We also decline, at this point, to address the statute of limitations issue raised by defendant Township of Grosse Ile. The township may renew its motion for dismissal on remand.

Remanded to the Tax Tribunal.