KENT COUNTY EDUCATION ASSOCIATION v WYOMING BOARD OF EDUCATION

Docket No. 74336. Submitted March 5, 1985, at Grand Rapids.— Decided September 4, 1985.

In December of 1979, defendant Wyoming Board of Education announced that at least 13 teaching positions would be terminated due to funding problems. After an examination of the district's finances, plaintiffs, Kent County Education Association and Wyoming Education Association, instituted an action against defendant in the Kent Circuit Court, alleging that defendant had expended money for capital projects, including site acquisitions, construction, and the purchase of new furniture and equipment, in violation of the State School Aid Act of 1979 in the years 1977-1979. The general operating fund of the Wyoming Public School District is primarily comprised of local tax revenues and state school aid monies. The following table shows the amounts received by the district from both state aid and local tax revenues for the years 1977 through 1979. The table further shows the amount of yearly expenditures made from the general fund for the purchase of furniture, equipment, and repairs (capital outlay). Finally, the table shows the amount of money transferred yearly from the general fund into the building and site fund.

|  | State Aid | Local Tax Revenue | Expenditures/ Capital Outlay | Transfers/ Bldg. & Site Fund |
|---|---|---|---|---|
| 1977 | $4,468,061 | $5,747,351 | $423,053 | $101,684 |
| 1978 | 4,992,282 | 5,913,896 | 475,249 | 40,000 |
| 1979 | 4,984,898 | 6,438,392 | 371,465 | 198,543 |

The State School Aid Act of 1979 provides that money received from the state shall apply to salaries of teachers and other employees, tuition, transportation, lighting, heating, ventilation, water service, the purchase of textbooks and other sup-

REFERENCES FOR POINTS IN HEADNOTE

Am Jur 2d, Schools §§ 85 et seq.

See the annotations in the ALR3d/4th Quick Index under topic Schools § 2.

plies. The statute further provides that an amount equal to not more than 5% of the total amount received by a district from the state may be expended by the board for capital costs or debt service and that the money may not be applied to any other purpose. The court, Robert A. Benson, J., granted summary judgment for defendant. Plaintiffs appealed. *Held:*

A school district is in compliance with the spending restrictions in the State School Aid Act of 1979 if in a given school year it spends an amount equal to no less than 95 percent of the amount received in state aid on teacher's salaries, textbooks, etc., and transfers an amount equal to no more than 5 percent of the amount received in state aid from its general fund to the building and site fund.

Affirmed.

SCHOOLS — STATE SCHOOL AID ACT OF 1979 — JUDICIAL CONSTRUCTION.

A school district is in compliance with the spending restrictions in the State School Aid Act of 1979 if in a given school year it spends an amount equal to no less than 95 percent of the amount received in state aid on teacher's salaries, textbooks, etc., and transfers an amount equal to no more than 5 percent of the amount received in state aid from its general fund to the building and site fund (MCL 388.1618; MSA 15.1919[918]).

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schultz),* for plaintiffs.

*Varnum, Riddering, Schmidt & Howlett* (by *Eugene Alkema* and *John Patrick White),* for defendant.

Before: HOOD, P.J., and MACKENZIE and R. D. DUNN,* JJ.

PER CURIAM. Plaintiff unions represent teachers working in the Wyoming Public School District in Wyoming, Michigan. In December of 1979, defendant school board announced that at least 13 teaching positions would be terminated due to funding problems. After an examination of the

* Circuit judge, sitting on the Court of Appeals by assignment.

district's finances, plaintiff unions instituted an action against defendant board in which they alleged that defendant had expended money for capital projects, including site acquisitions, construction, and the purchase of new furniture and equipment, in violation of the State School Aid Act of 1979, MCL 388.1601 *et seq.;* MSA 15.1919(901) *et seq.* (formerly known as the State School Aid Act of 1977, see 1977 PA 90), and the School Code of 1976, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.* Plaintiffs claimed that these expenditures created a deficit in the district's general fund which resulted in teacher layoffs. Both parties brought cross-motions for summary judgment. Defendant's motion was granted by the court and plaintiffs' cause of action was dismissed with prejudice. Plaintiffs appeal as of right.

The general operating fund of the Wyoming Public School District is primarily comprised of local tax revenues and state school aid monies.[1] The expenditure of the sums is controlled in general fashion by state law. Section 18 of the State School Aid Act of 1979, MCL 388.1618; MSA 15.1919(918), provides that money received from the state shall apply to "salaries of teachers and other employees, tuition, transportation, lighting, heating, ventilation, water service, the purchase of textbooks * * * and other supplies". The statute further provides that "[a]n amount equal to not more than 5% of the total amount received by a district [from the state] may be expended by the board for capital costs or debt service * * *. The money shall not be applied or taken for a purpose other than as provided in this section."

Money received by the district from the levy of

---

[1] For purposes of this case we will assume that the general fund of the Wyoming School District is comprised solely of both local tax revenues and state aid monies.

local taxes, in comparison, may be spent for "school operating purposes". MCL 380.1211; MSA 15.41211. The phrase "school operating purposes" includes expenditures made for "furniture and equipment, for alterations necessary to maintain school facilities in a safe and sanitary condition, for funding the cost of energy conservation improvements in school facilities, and for deficiencies in operating expenses for the preceding year". MCL 380.1211(2); MSA 15.41211(2). Expenditures for site acquisitions and building construction are not authorized under this section. See MCL 380.1212; MSA 15.41212.

The following table (I) shows the amounts received by the district from both state aid and local tax revenues for the years 1977 through 1979. The table further shows the amount of yearly expenditures made from the general fund for the purchase of furniture, equipment, and repairs (capital outlay). Finally, the table shows the amount of money transferred yearly from the general fund into the building and site fund.

|  | State Aid | Local Tax Revenue | Expenditures/ Capital Outlay | Transfers/ Bldg. & Site Fund |
|---|---|---|---|---|
| 1977 | $4,468,061 | $5,747,351 | $423,053 | $101,684 |
| 1978 | 4,992,282 | 5,913,896 | 475,249 | 40,000 |
| 1979 | 4,984,898 | 6,438,392 | 371,465 | 198,543 |

The following table (II) shows the amount of state aid money which under the 5-percent formula found in § 18 of the State School Aid Act of 1979 could have been spent on "capital costs".

|  | State Aid | Maximum % | Allowable Expenditures |
|---|---|---|---|
| 1977 | $4,468,061 | .05 | $223,406 |
| 1978 | 4,992,282 | .05 | 249,614 |
| 1979 | 4,984,898 | .05 | 249,395 |

Plaintiffs contend that the phrase "capital costs" as found in § 18 includes both money transferred to the building and site fund and money spent on furniture, equipment, and repairs. If this definition is correct, plaintiffs argue, then defendant has violated the school aid act for each year in question. For example, in 1978 defendant spent $475,249 on furniture, equipment, and repairs (see Expenditure/Capital Outlay — Table I), and $40,000 on real estate purchases and construction (see Transfers/Building and Site Fund — Table I). When added together, the resulting amount ($515,249) is greater than the amount permitted under § 18 for capital costs ($249,614. See Allowable Expenditures — Table II). If capital costs include only expenditures for real estate and construction, however, the amount transferred to the building and site fund ($40,000) is well within that amount allowed by statute ($249,614).

We find it unnecessary under the facts of this case to decide the precise definition of "capital costs" as the expenditures of money by defendant for the years in question comply with the dictates of both the School Code and the State School Aid Act of 1979 regardless of whether plaintiffs' interpretation of the phrase is correct.

As previously seen, money received by a school district into its general fund from local tax revenues can be spent on educational programs (e.g., salaries, textbooks, etc.) and/or furniture, equipment, and repairs. MCL 380.1211; MSA 15.41211. As no other spending limitations are imposed by the act, defendant could conceivably spend an amount equal to the district's entire revenue from local taxes on capital outlays (e.g., furniture, equipment, and repairs) without violating the School Code. Under § 18 of the school aid act,

defendant must spend an amount from the general fund equal to at least 95 percent of the money received from state aid on teacher's salaries, textbooks, etc., and an amount equal to no more than 5 percent of state aid receipts on "capital costs". Even assuming that the phrase "capital costs" means both capital outlays such as furniture, equipment, and repairs, *and* building and site acquisitions, the maximum amount of money that can be transferred to the building and site fund from the general fund is 5 percent of state aid. The maximum amount that can be spent from the general fund on capital outlays, however, is all of a district's local tax revenues plus 5 percent of its state aid (in the event that none of the state aid money is transferred to the building and site fund). Therefore, as long as an amount not more than 5 percent of the state aid received is transferred from the general fund into the building and site fund, and further, as long as an amount not less than 95 percent of the state aid received is spent on teacher's salaries, textbooks, etc., the remaining revenue in a district's general fund can be spent on capital outlays (*e.g.,* furniture, equipment, and repairs) and/or salaries, textbooks, etc., in any combination, without violating state law. Defendant has complied with these requirements for each of the years in question.

In 1978, for example, the Wyoming School District received approximately $5 million in state aid and approximately $6 million in local tax revenues. See Table I. Combined, the general fund of the district was close to $11 million. In order to comply with § 18, no more than $250,000 could be transferred from the general fund into the building and site fund ($5,000,000 × .05) and no less than $4,750,000 ($5,000,000 × .95) could be spent on salaries, textbooks, etc. Defendant transferred

only $40,000 in 1978 into the building and site fund (see Table I) and approximately $10,485,000 went for salaries, textbooks, etc. ($11,000,000 minus $40,000 minus $475,000). Both of these amounts are well within the statutory guidelines.

We therefore conclude that defendant violated neither the State School Aid Act of 1979 nor the School Code of 1976 by its expenditures and transfers for the years 1977 through 1979. Accordingly, the result reached by the trial court is affirmed.

Affirmed. No costs, a public question being involved.