lic Schools; Elk Rapids Public Schools; Leonard Barnhart; and Jerry L. Inman, Defendants.

No. 689–40050 CA.

United States District Court, W.D. Michigan, S.D.

Nov. 14, 1989.

Angelita MERCADO, Plaintiff,

v.

KINGSLEY AREA SCHOOLS/TRAVERSE CITY PUBLIC SCHOOLS ADULT EDUCATION CONSORTIUM; Traverse City Area Public Schools; Kingsley Area Public Schools; Suttons Bay Area Public Schools; Leland Pub-

Dettmer, Thompson & Parsons by Grant W. Parsons, Read & Sharp by Douglas J. Read, Traverse City, Mich., for plaintiff.

Menmuir, Zimmerman, Kuhn & Bearup by George F. Bearup, Traverse City, Mich., for defendants Traverse City Area Public Schools, Kingsley Area Public Schools, Suttons Bay Area Public Schools and Elk Rapids Public Schools.

## OPINION

ENSLEN, District Judge.

In this action, plaintiff Angelita Mercado seeks a declaratory judgment declaring defendant school districts and individuals in violation of the Michigan School Aid Act of 1979 found in Mich.Comp.L. § 388.1708 et seq. ("the Act"). Plaintiff claims 14th Amendment violations, specifically, violations of due process and equal protection rights. Plaintiff seeks an order enjoining defendants from diverting or appropriating any funds received under the adult education program's auspices for any purpose other than the actual and necessary costs of operating the adult education program, and an order that the defendant school

districts reimburse all monies diverted from the adult education program. She also seeks compensatory and punitive damages, as well as actual costs and attorney fees pursuant to 42 U.S.C. § 1988. Plaintiff's jurisdiction for this action arises under 28 U.S.C. § 1343, and although not explicitly stated in her complaint, plaintiff's cause of action arises under 42 U.S.C. § 1983, with pendent jurisdiction over the state law claim.

This case is before the Court on defendants' Motion for Judgment on the Pleadings. Defendants make their motion pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] asserting that plaintiff has failed to state a claim upon which relief can be granted. Defendants contend they are entitled to judgment as a matter of law on all counts of plaintiff's complaint. They claim plaintiff lacks standing, she does not have a property or liberty interest in adult education, and that plaintiff is not a member of a suspect class and does not have a fundamental right to adult education.

### Facts

In her complaint plaintiff Angelita Mercado alleges that in or about February 1986, at age seventeen, and as a single parent, she enrolled in the defendant's adult education program in order to complete her high school equivalency requirements.[2] Ms. Mercado continued her enrollment in the program through April 1988. While she was enrolled, Ms. Mercado's expectations concerning her education were delayed, frustrated or denied because of the manner in which the defendants conducted the adult education program. Specifically, Ms. Mercado alleges that she encountered the following:

(a) Despite being charged a book deposit for each of four semesters, Ms.

[1] In her brief in opposition to defendants' motion for judgment on the pleadings, plaintiff claims that the defendants filed their motion without citation to the Federal Rules of Civil Procedure. Plaintiff spends a portion of her brief construing the defendants' motion under various rules. The Court is somewhat mystified by plaintiff's failure to note the reference to

Fed.R.Civ.P. 12(b)(6) on the first page of defendants' motion.

[2] The Court recognizes that defendant contests many of these factual allegations. However, in reviewing a Rule 12(b)(6) motion, the Court must construe the complaint liberally in favor of the plaintiff and accept as true all factual allegations contained therein.

Mercado never received any school books;

(b) She was required to furnish her own pencils, paper, craft and other materials, or alternatively the teachers paid for standard materials out of their own pockets;

(c) Adequate bathroom and parking facilities were not provided;

(d) Ms. Mercado was not allowed to use the school library, and alternatively she loaned personal books to the defendants' programs;

(e) She had to temporarily drop out prior to graduation because the defendants' program failed to offer additional classes;

(f) No visual aids were offered;

(g) No filing or storage equipment was provided;

(h) No substitute teachers were provided, necessitating the cancellation of classes unless the regular teachers hired substitutes with their own funds;

(i) Homework assignments could not be given because few books were available;

(j) Available books were outdated and shared by two or three students;

(k) Some classes were taught using magazines as texts;

(*l*) There was no "organized guidance service," inadequate "support and counseling service" and no "governing board" running the program.

Plaintiff alleges that the defendants misappropriated and diverted approximately $150,000 per year in violation of the Act, causing the hardships outlined above. In addition to violation of state law, plaintiff alleges fourteenth amendment violations; specifically, a violation of property rights without due process and a violation of equal protection.

### Standard

Defendant has filed this motion pursuant to Fed.R.Civ.Pro. 12(b)(6). Under this Rule, the Court must limit its inquiry to the pleadings. "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ." Fed.R.Civ.Pro. 12(c). *See Granger v. Marek*, 583 F.2d 781, 785 (6th Cir.1978). In the case at hand, the Court cannot treat the motion as one for summary judgment. The case has been referred to mandatory arbitration, and under Western District of Michigan Court Rule 43, no Rule 56 motion will be noticed or heard prior to completion of the arbitration process. Thus, in order to address defendant's motion, it must remain a Rule 12(b)(6) motion. I will therefore limit my consideration to matters within the pleadings.

In reviewing the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), the court must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir.1987); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The court must determine whether plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. Dismissals of complaints filed under the civil rights statutes are scrutinized with special care. *Kent*, 821 F.2d at 1223; *Brooks v. Seiter*, 779 F.2d 1177, 1180 (6th Cir.1985). The court's task on a 12(b)(6) motion is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen*, 495 F.Supp. 822, 827 (E.D.Mich.1980). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermilion Foam Products Co. v. General Electric Co.*, 386 F.Supp. 255 (E.D.Mich. 1974). The court cannot dismiss plaintiff's complaint unless "it appears beyond doubt

that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). With this standard in mind, the court will review the pleadings filed by both parties.

*Discussion*

*Standing*

■ Defendants argue that the plaintiff lacks standing to challenge the funding of their adult education program because no private right of action may be inferred from Michigan's School Aid Act. Defendants contend that the plaintiff lacks standing to pursue her constitutional claims because, as a former student, she has no interest in injunctive relief or prospective reform of the program. The first of these arguments addresses plaintiff's standing to pursue her pendent state claim that the defendants' funding policies violate state law; the second addresses her ability to challenge the funding policies as violative of her federal constitutional rights.

As the Supreme Court held in *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984):

> A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

> .    .    .    .    .

> The injury alleged must be ... "distinct and palpable," ... and not "abstract" or "conjectural" or "hypothetical." The injury must be "fairly" traceable to the challenged action, and relief from the injury must be "likely" to follow from a favorable decision.

*See also Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782, 793 (1988) (plaintiff must "establish at an irreducible minimum an injury in fact ... resulting from the putatively illegal action...."); *Simon v. East Kentucky Welfare Rights Organization*, 426 U.S. 26, 38–39, 96 S.Ct. 1917, 1924–1925, 48 L.Ed.2d 450 (1976) (plaintiff must make "allegations which, if true,

would establish that the plaintiff has been injured in fact by the action [she seeks] to have reviewed ..."). The injury alleged must result from the defendant's challenged conduct; it may not be an "injury that results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 41–42, 96 S.Ct. at 1925–1926. Further, plaintiff must allege facts indicating that the injury would be redressed by a favorable ruling. Standing may not be premised, "on little more than the remote possibility, unsubstantiated by allegations of fact, that [plaintiff's] situation might have been better had [defendants] acted otherwise, and might improve were the court to award relief." *Warth v. Seldin*, 422 U.S. 490, 507, 95 S.Ct. 2197, 2209, 45 L.Ed.2d 343 (1975).

The complaint in this case alleges that plaintiff was enrolled in defendants' adult education program between 1986 and 1988. The complaint further alleges that plaintiff was unable to complete her high school education through the program, because the defendants diverted state funds intended to benefit the program to other uses, thus depriving the adult education program of the funds necessary to allow it to offer the courses plaintiff needed to complete her education. Complaint, ¶¶ 30–31, 33, 38. These allegations are sufficient to establish that the plaintiff has been "injured in fact" by the defendants' allegedly unlawful conduct. More problematic, however, is the question of whether a favorable ruling by this Court would redress the injury alleged. Both federal counts ("violation of property rights without due process" and "violation of equal protection") seek damages, which would presumably compensate plaintiff for her inability to attain a high school diploma. Further, it is reasonable to assume that the injunctive relief requested—restitution of funds allegedly diverted in the past and an injunction barring future diversions—would enable the adult education program to offer the classes plaintiff needs to complete her education, thus redressing her injury. I find, therefore, that plaintiff has standing to assert her federal claims.

**340**

### Private Cause of Action

■ Plaintiff's final claim for relief requests that the Court declare defendant's operation of their adult education program violative of Michigan's School Aid Act. Defendants argue that plaintiff lacks standing to assert this pendent state claim, because no private cause of action may be inferred from that statute. Defendants argue that plaintiff lacks standing because: (1) the Act does not expressly create a private cause of action; (2) implication of a cause of action would defeat the legislative purpose of the Act and cause school districts to discontinue their adult education programs; (3) the legislature has designated the State Attorney General as the individual to enforce the Act's substantive provisions; and (4) as a former student, plaintiff has no interest in the injunctive or prospective relief sought.

This final argument has already been addressed. Plaintiff has an interest in the injunctive relief sought because an order preventing the future diversion of funds would allow the adult education program to offer the classes she needs to attain a high school diploma. While plaintiff is no longer actively enrolled in the adult education program, she alleges that the defendants' unlawful conduct "constructively expelled" her from that program, thus allowing the reasonable inference that she would re-enroll if the unlawful conduct were enjoined.

■ Defendants correctly note that the Act does not expressly create a private cause of action. Whether a private cause of action may be inferred, however, is a much closer question. Under Michigan law, a private cause of action may be inferred from a statute if the plaintiff is a member of a class for whose "especial benefit" the statute was enacted. *Gardner v. Wood,* 429 Mich. 290, 302, 414 N.W.2d 706 (1987); *Rayford v. Detroit,* 132 Mich.App. 248, 254, 347 N.W.2d 210 (1984). As the court noted in *Rayford,* "The test as applied by ... Michigan courts is whether the statute is designed to protect the public or the private sector. If the latter, then generally a private right of action exists." Michigan courts sometimes look to the pream-

ble of a statute to determine whether the statute was intended to protect a particular class of citizens. *Id.* at 253, 347 N.W.2d 210. The fact that a statute designates a public official or body as its enforcer does not, by itself, preclude recognition of a private cause of action. *Pompey v. General Motors Corp.,* 385 Mich. 537, 557–59, 189 N.W.2d 243 (1971).

The statute at issue here is concerned primarily with the manner in which state monies are disbursed to local school districts and the manner in which those funds may be used by the districts. As such, it is reasonable to conclude that the Act has as at least one of its purposes the provision of state financial aid to poorly funded school districts. But the Act also places limitations on the purposes for which such funds may be used. Some state funds are disbursed to school districts under "categorical" funding provisions, and may be used only for a particular purpose, such as providing special education programs or transportation. Other state funds are disbursed to a school district's "general fund," and may be used for any number of purposes. The Act, however, places some limitations upon the use of those funds. *Cf. Kent County Education Association v. Wyoming Board of Education,* 145 Mich.App. 452, 378 N.W.2d 778 (1985) (School Aid Act limits percentage of undesignated state funds which may be spent on capital improvements).

State funds for adult education are not "categorical" funds. These funds are disbursed only to school districts that otherwise qualify for state financial assistance, and the amount of state funding is based upon the number of students enrolled in the adult education program during the school year. Mich.Comp.L. § 388.1707. The Act further provides that school districts may enter into cooperation agreements with other school districts to conduct adult education programs. Mich.Comp.L. § 388.1708(2). School districts which are otherwise ineligible for state funding may cooperate with a funded district, and the resulting program receives state financial aid based upon the total adult student pop-

ulation, including students from the ineligible district. Mich.Comp.L. § 388.1708(3). The defendants in this case have created such a cooperative adult education program.

The statute places limitations upon the manner in which adult education funds paid to a cooperative district may be spent:

The district serving as the administrator of the adult education program shall pay only reasonable fees for services, facilities, and utilities provided directly to the program by a cooperative district. These fees shall reflect only actual costs to the cooperating district. No other payments may be made to a cooperating district by the district serving as the administrator.... The funds generated by the administering district shall be used to support actual reasonable costs of the adult education programs in the cooperative program with the exception that administering districts may use revenues in addition to that needed to meet the costs of the adult education program to provide supplemental services within the consortium in the areas of early childhood education, alternative education, dropout prevention, community education, teen parent programs for youth, or other department-approved education programs.

Mich.Comp.L. § 388.1708(2).

All districts receiving funds for adult education must: (a) provide the program within the district's geographic boundaries; (b) develop course descriptions for adult courses; (c) have on file a planned education program for each pupil comparable to those maintained for pupils in the district's regular program; (d) "[e]nsure that the adult high school completion program is comparable to the requirements and standards of other high school completion programs in that district"; (e) maintain pupil records similar to those maintained for pupils in the regular high school program; and (f) file a report with the department of education describing the district's efforts to achieve those standards. Mich.Comp.L. § 388.1708(1).

As I indicated above, the statute's preamble indicates that at least one legislative purpose behind the statute is to provide local school districts with state funding for adult education. But the restrictions placed upon the use of adult education funds indicate that another purpose of the statute is to provide adequate adult education programs in funded school districts. This, in turn, would indicate an intent to benefit persons, like the plaintiff, who were unable to complete the regular high school education program. Without any citation to relevant legislative history, defendants' argument that the Act is intended only to encourage development of adult education programs, rather than to require that funded adult education programs be operated in a particular manner, is unpersuasive. The statute requires that adult education funds be spent first on adult education, while allowing excess funds to be spent upon a limited class of other education programs. This indicates that the purpose of the statute is not simply, as defendants would argue, to enhance funding to the general funds of districts administering cooperative adult education programs, but rather to enhance funding for adult education programs, and to ensure that those funds are in fact spent on adult education programs.

This case thus differs from *Rayford v. Detroit*, 132 Mich.App. 248, 347 N.W.2d 210 (1984). The plaintiffs in *Rayford* were city employees who lost their jobs when the mayor implemented a savings plan. They argued that the plan was an attempt by the mayor to amend the city's budget, without city council approval, in violation of Michigan's Uniform Budgeting and Accounting Act. Mich.Comp.L. § 141.440. This statute requires that deviations from a city's original budget be approved by the city council, since it requires that the budget be amended to reflect the deviations. Although the court of appeals agreed that the statute sought to limit a mayor's authority to unilaterally amend a city budget, the court held that the plaintiffs lacked standing to pursue their challenge:

It disturbs us that the plaintiffs and the intervening plaintiff's members are forced out of employment, but they are without standing to maintain this suit

under the Uniform Budgeting and Accounting Act. Its purpose is to promote uniform budgets and to avoid deficit spending, not to afford security of employment.

*Id.* at 257, 347 N.W.2d 210.

In this case, the relevant portions of the Act have as their purpose the funding of adult education programs, and as a consequence, the provision of adult education to persons like the plaintiff. The Act requires that funds received for adult education be spent primarily on adult education. The plaintiff contends that the defendants receive funds for adult education, but spend the funds on other programs. Under these circumstances, I cannot conclude as a matter of law that the Act was not intended to benefit potential adult education students, nor can I conclude that the statute was not intended to prevent the diversion of adult education funds to regular high school programs, the harm of which plaintiff complains. Defendants' argument to the contrary, unsupported as it is by citations to the legislative history or other authority, is unpersuasive.

Defendants' argument that implication of a private cause of action would defeat the legislative purpose of the Act, to encourage school districts to offer adult education classes, because districts would cancel their programs rather than face the possibility of suit is similarly unpersuasive. First, Michigan courts have long recognized "taxpayer" standing, allowing taxpayers to challenge government appropriations where they are able to allege that their taxes will be increased or that they "will suffer a pecuniary loss due to the challenged conduct." *Rayford*, 132 Mich.App. at 257–58, 347 N.W.2d 210; *Grosse Ile Committee for Legal Taxation v. Township of Grosse Ile*, 129 Mich.App. 477, 342 N.W.2d 582 (1983). On at least two occasions, the Michigan courts have allowed members of a teachers union and residents of a school district to challenge appropriations made by school districts as violative of the statute at issue here or of provisions of the Michigan Constitution. *Durant v. Department of Education*, 129 Mich.App. 517, 342 N.W.2d 591; *aff'd in part* 424

Mich. 364, 381 N.W.2d 662 (1985); *Kent County Education Association v. Wyoming Board of Education*, 145 Mich.App. 452, 378 N.W.2d 778 (1985). The Court may take judicial notice of the fact that public education continues to exist in the State of Michigan, despite the threat that residents or teachers' unions may sue districts over appropriation decisions. There is little reason to believe that the mere possibility of suit would extinguish adult education programs across the state.

Second, there is no reason to believe that courts would recognize private causes of action to redress the relatively picayune grievances defendants mention in their brief. Defendants predict that if a private cause of action is implied from the Act, allowing plaintiff to challenge alleged misappropriations of funds from an adult education program to some other program, "Any student with a low paid teacher or old desk would have a cause of action. All kindergarteners would be potential plaintiffs. Virtually any high school dropout would have a viable cause of action alleging that some inequities in expenditure frustrated his or her attempt to obtain a diploma." Brief in Support of Motion for Judgment on the Pleadings at 10–11.

Defendants' argument is based on the faulty premise that plaintiff's claim relies upon the theory that all public education students are entitled to equality of expenditure from the local school district. Thus, defendants predict that any student whose teacher was paid less than some other teacher in the district, or whose desk was older than others in the district would have a claim against the district because less money was spent on that student's education than on some other student's education. But this argument misunderstands plaintiff's claim. As I read her complaint, she does not argue that the defendants must spend as much money on her as they do on "regular" high school students. Rather, she argues that defendants must spend the adult education funds they receive from the state on their adult education program, rather than on programs designed to benefit other students. It is

this alleged misappropriation of state monies that plaintiff challenges. Students challenging alleged inequities in funding, without support from a statute designating how state funds are to be spent, would lack a cause of action. The motion to dismiss plaintiff's pendent state claim for lack of standing is denied.

### Due Process Claim

■ Defendants argue that plaintiff has not been denied property without due process of law because she does not have a property right in adult education. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ... The 14th amendment forbids the state to deprive any person of life, liberty or property without due process of law. Protected interests in property are normally not created by the Constitution. Rather they are created in their dimension and are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits.

Accordingly, the question becomes whether or not plaintiff has, "under an independent source such as state statutes or rules" a protected property right in defendants' adult education program. Property rights demanding the procedural protections of due process have been found in employment which, under state or federal law, was to continue absent sufficient cause for discharge. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Connell v. Higginbotham*, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971). Welfare recipients who have statutory rights to welfare may invoke the due process clause. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the procedural protections of the Due Process Clause were triggered by official cancella-tion of a prisoner's good-time credits accumulated under state law, although those benefits were not mandated by the Constitution.

In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), a class action was brought by Ohio public school students who alleged that they had been suspended from public school in Columbus, Ohio for up to ten days without a hearing. The Court noted that "Although Ohio may not be constitutionally obligated to establish and maintain a public school system, it has nevertheless done so and has required its children to attend.... [Thus] on the basis of state law, [plaintiffs] plainly had legitimate claims of entitlement to a public education." The Court held that the Ohio statute which permitted the principal of an Ohio public school to enforce such a suspension violated the Due Process Clause.

However, the protected property interest in public education does not create a similar property interest in non-mandatory activities associated with public education. In *Berschback v. Grosse Pte Schools*, 154 Mich.App. 102, 397 N.W.2d 234 (1986), the Michigan Court of Appeals was presented with a question regarding Michigan High School Athletic Association eligibility rules which barred transfer students from participating in interscholastic athletics for the first semester the student attended a new school. The students alleged that these rules violated their 14th amendment right to due process. The court recognized the distinction between compulsory and elective or nonmandatory programs. Specifically, the court ruled that nonmandatory programs do not create any entitlement. In ruling that the plaintiffs had no due process rights, the court stated:

> Based on the fact that Michigan statutory and case law merely allows a school district to participate in interscholastic athletics and does not mandate such participation, we conclude that Michigan law does not provide plaintiffs with a basis for a legitimate claim of entitlement to participation in interscholastic athletics. Thus, we conclude that plaintiffs have not shown that there is a property or

liberty interest involved in the participation in interscholastic athletics such that participation in interscholastic athletics is protected by the 14th amendment of the United States Constitution. *Id.* at 119, 397 N.W.2d 234.

In the instant case, adult education programs in Michigan are non-mandatory programs. Mich.Comp.L. § 380.1293 provides:

> The board of a school district other than a primary district[3] may provide instruction for adults and may employ qualified teachers and provide the necessary equipment for adult education courses. (footnote added).

School districts are not required to provide adult education programs. They may chose to do so, but no state statute or rule mandates educational programs for adults. For the purposes of this case, adult education programs are more analogous to the interscholastic athletic programs in *Berschback* than to the mandatory public school program in *Goss.*

Ms. Mercado's claim that she has a protected property right rising to the level of triggering due process procedures in the defendants' adult education program fails. Ms. Mercado was not precluded from attending high school due to her pregnancy, Mich.Comp.L. § 380.1301, (prohibiting expulsion from a public school because of pregnancy), nor was she suspended for some other reason like the plaintiffs in *Goss.* While it may be unfortunate that Ms. Mercado has not been able to finish her education, legal precedent compels this Court to conclude that she does not have a liberty or property interest in defendants' adult education program sufficient to trigger protection.

#### Equal Protection

▇▇▇ Ms. Mercado claims that defendants' actions have denied her equal protection of the law as guaranteed by the 14th amendment. The 14th amendment prohibits the states from denying to any person within their jurisdiction equal protection of the laws. Although the exact meaning of this phrase evades definition, it has been repeatedly said that the guaranty of the equal protection clause means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances. *Kentucky Finance Corp. v. Paramount Auto Exchange Corp.*, 262 U.S. 544, 549, 43 S.Ct. 636, 638, 67 L.Ed. 1112 (1923). In reviewing economic and social regulation under the equal protection clause, restraint should be exercised. Such legislation is invested with a presumption of constitutionality, and it is required that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state interest or purpose. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Only if a suspect group or fundamental interest is involved does the degree of scrutiny which the court applies rise to the level of strict scrutiny.

▇▇▇ In determining whether a class is suspect, the court traditionally looks for an indication that the class is saddled with such disabilities or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973). Suspect classifications deserving of special scrutiny include those based on race, national origin or religion, *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), alienage, *Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977), and sex, *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). On the other hand, illegitimate children, *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct.

---

**3.** A primary school district is one which, among other things, may not operate a grade above the eighth grade. Mich.Comp.L. § 380.80.

2755, 49 L.Ed.2d 651 (1976), indigent women desiring abortions, *Poelker v. Doe*, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977), veterans, *Cleland v. National College of Business*, 435 U.S. 213, 98 S.Ct. 1024, 55 L.Ed.2d 225 (1978), and conscientious objectors, *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) have been held by the Supreme Court not to be suspect classifications. The Tenth Circuit Court of Appeals has held that single parents of minor children do not constitute a suspect class. *Lindenau v. Alexander*, 663 F.2d 68 (10th Cir. 1981).

■ A heightened level of scrutiny will be employed if a fundamental right is involved. In *San Antonio*, 411 U.S. 1, 93 S.Ct. 1278, the Court ruled that education is not a fundamental right afforded explicit or implicit protection under the federal constitution. The Michigan courts have followed the ruling in *San Antonio* and reached the same conclusion with respect to Michigan's constitution. In *Palmer v. Bloomfield Hills Board of Education*, 164 Mich.App. 573, 576–77, 417 N.W.2d 505 (1987), the court stated:

> [E]ducation is not a fundamental right under the Michigan Constitution of 1963. The mere fact that the Michigan Constitution of 1963 mentions education, while the federal constitution does not, provides no justification for abandoning past decisions and holding education to be a fundamental right under Michigan's constitution.

*Accord East Jackson Public Schools v. Michigan*, 133 Mich.App. 132, 137–38, 348 N.W.2d 303 (1984); *Sutton v. Cadillac Area Public Schools*, 117 Mich.App. 38, 43, 323 N.W.2d 582 (1982).

■ In her complaint,[4] plaintiff identifies herself as "a member of two identifiable classes of individuals whose status involves significant and/or fundamental federal protects [sic] rights:

a) single parents who are of school age, but are unable for public school attendance; and

b) worth participants in statutorily-established public school programs.

Ms. Mercado's complaint fails to allege facts which would raise the level of scrutiny beyond the rational basis test. There is no authority for the proposition that Ms. Mercado, as a single parent or participant in defendants' adult education program, is a member of a suspect class. Additionally, it is clear that education is not a fundamental right.

■ I am unable to conclude from the pleadings, however, that plaintiff has absolutely failed to state a claim of equal protection violation. Plaintiff alleges in her complaint that as a result of the defendants financial diversions and misappropriations, the program run by defendants is not reasonably comparable to other high school completion programs in the district as required by state statute. I will allow plaintiff to offer evidence in support of her equal protection claim. It is clear, however, that the strict scrutiny test for review does not apply in this case, and the standard to be employed in deciding plaintiff's claim is whether defendants' method of administration of their adult education program has some rational basis to the state's legitimate interest in fostering adult education.

In summary, defendants' motion for judgment on the pleadings is granted in part and denied in part. Defendants' motion is denied in that I find that plaintiff has standing to pursue her pendent state claim and to challenge the defendants' funding policies as violative of her federal equal protection rights. I also find that a private cause of action may be inferred from the Act under the circumstances presented in this case. Further, plaintiff has set forth sufficient allegations to en-

---

**4.** Plaintiff identifies herself as an Hispanic in her brief in opposition to defendants' motion. However, on a Rule 12(b)(6) motion, the Court is confined to limiting its review to pleadings. Plaintiff's factual allegations in her brief cannot be considered by the Court.

title her to offer evidence to support her claim of an equal protection violation. Plaintiff's equal protection claim will, however, be viewed under the "rational basis" standard. Defendants' motion is granted in that plaintiff has failed to set forth sufficient allegations to establish a due process claim.